**RAYMOND AND GURDA CHARLESWELL, MARSHA CHRISTIAN, JACQUELINE JEFFRIES, MARILYN A. CREQUE, JEAN S. MAYNARD, HOLLISTER PIERRE and VERDINE PIERRE, Plaintiffs**

**v.**

**CHASE MANHATTAN BANK, N.A., CHASE MANHATTAN MORTGAGE CORPORATION and CHASE AGENCY SERVICES, INC., Defendants**

No. 01-119

District Court for the Virgin Islands

February 27, 2004

495

497

498

499

500

DUBOIS, *Judge*

## MEMORANDUM

## I. INTRODUCTION

This class action arises out of claims by plaintiffs, Raymond and Gurda Charleswell, Marsha Christian, Jacqueline Jeffries, Marilyn A. Creque, Jean S. Maynard, Hollister Pierre and Verdine Pierre ("plaintiffs"), and a putative class of 989 Virgin Islands real property owners against defendants, Chase Manhattan Bank, N.A. ("Chase"), Chase Manhattan Mortgage Corporation ("CMMC"), and Chase Agency Services, Inc. ("CAS") (collectively "defendants"), for recovery of tens of millions of dollars in insurance coverage for damage to their property in the Virgin Islands caused by Hurricane Marilyn in September 1995.

In the Class Action Complaint, plaintiffs allege, *inter alia*, that defendants Chase and CMMC (collectively "the Chase defendants"), which held mortgages on plaintiffs' property, procured or provided hazard insurance coverage for plaintiffs and then failed to advise plaintiffs of the full nature and extent of their coverage. Plaintiffs also claim that such defendants and CAS charged plaintiffs excessive premiums for insurance on their property after it was demolished or damaged by the hurricane. They seek relief for negligent misrepresentation, fraud, negligence, breach of contract, breach of fiduciary obligation, breach of the duty of good faith and fair dealing, bad faith, and civil violations of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* and the Criminally Influenced and Corrupt Organizations Act ("CICO"), 14 V.I.C. § 600 *et seq.*

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint ("Defs.' Motion"). In essence, defendants contend that their only contracts with plaintiffs were the mortgage contracts, and under the mortgages, they had no obligation to provide insurance. In their response to the Motion, plaintiffs argue, *inter alia*, that their claims are based on separate agreements to procure or provide insurance, not the mortgages.

501

For the reasons set forth in this Memorandum, defendants' Motion to Dismiss Plaintiffs' Complaint is granted in part and denied in part. Defendants' Motion to Dismiss is granted with respect to plaintiffs' claims of negligent misrepresentation (Count I), bad faith (Count IX), that part of Count XI in which plaintiffs allege a violation of RICO § 1962(a), and that part of Count XII in which plaintiffs allege a violation of CICO § 605(c). Such claims are dismissed without prejudice to plaintiffs' right to file an amended complaint. The Court denies the Motion to Dismiss with respect to plaintiffs' claims for breach of contract (Count VI), breach of the duty of good faith and fair dealing (Count VIII), negligence (Counts III, IV, and X), fraud (Counts II and V), breach of fiduciary duty (Count VII), and violations of RICO § 1962(c) (Count XI) and CICO § 605(a) (Count XII). The denial of the Motion to Dismiss with respect to these Counts is without prejudice to defendants' right to raise the issues addressed in the Motion to Dismiss at the conclusion of relevant discovery by motion for summary judgment and/or at trial.

## II. BACKGROUND

The Court first sets forth the relevant background for plaintiffs' claims. The facts are taken from the Class Action Complaint ("Complaint"):

Beginning on January 1, 1994, the Chase defendants provided banking and mortgage services in the United States Virgin Islands ("Virgin Islands"). Chase is a national banking association with its principal place of business in New York City, New York. CMMC and CAS are corporations affiliated with Chase.[1] Compl. ¶¶ 2-4, 15. Prior to September 15, 1995, plaintiffs obtained mortgages from Chase in connection with the purchase of their homes and other properties in the

---

[1] The Complaint fails to individuate the allegations against Chase and CMMC. Some allegations are addressed to the Chase defendants (Chase and CMMC), whereas others are addressed to Chase. Moreover, there is some inconsistency in such allegations - in some parts of the Complaint conduct is attributed to the Chase defendants whereas in other parts of the Complaint similar conduct is alleged against Chase. *See, e.g.* ¶¶ 16(a), 28. This is an issue that should be resolved by discovery. On the present state of the record, the court will not differentiate between Chase and the Chase defendants when faced with inconsistent allegations of which institution did what and instead will attribute such allegations to the Chase defendants.

Virgin Islands. *Id.* ¶ 17.a. The mortgage agreements required plaintiffs to, *inter alia*, "acquire and maintain insurance on their mortgaged property." *Id.* ¶ 18.

Plaintiffs were unable to procure property insurance or could only obtain insurance through substandard carriers. *Id.* As a result, Chase and CMMC offered plaintiffs a "'forced placed insurance' program." *Id.* ¶¶ 3, 16(b), 18. The program was administered by Chase's internal insurance group in New York City, The Donnelly Corporation, and Patrick R. Donnelly. Donnelly and the Donnelly Corporation were "engaged" by the Chase defendants in 1994 to assist in the administration of that program and in the procurement of bulk insurance coverage from Lloyd's of London. *Id.* ¶¶ 16.a., 28. Through this insurance program, referred to as the U.S. Virgin Islands Property Insurance Program ("Property Insurance Program") in the Complaint, "Chase defendants obtained, procured, provided, and sold windstorm, hazard, and casualty insurance coverage" for plaintiffs. *Id.* ¶¶ 16.b, 18. Specifically, between January 1, 1994 and at least September 15, 1995, the Chase defendants obtained "a bulk insurance policy for a percentage of their entire loss risk" through Lloyd's of London ("Lloyd's"). *Id.* ¶ 16.c. According to plaintiffs, this bulk policy "acted essentially as reinsurance" to cover a percentage of the Chase defendants' risk. *Id.* Chase, CMMC, and Donnelly assured the Virgin Islands Division of Banking and Insurance that the Property Insurance Program would insure both the interests of the homeowners and the interests of the Chase defendants in the insured properties. *Id.* ¶ 32.a. However, the Chase defendants only secured enough insurance to protect their mortgage loan interest in the properties, leaving the homeowners' equity interests uninsured. *Id.*

Plaintiffs contend that Chase offered plaintiffs insurance coverage through the Property Insurance Program and "assured" plaintiffs that the program would provide them with "adequate coverage." *Id.* ¶ 18. Based on those representations, plaintiffs agreed to purchase forced place insurance from the Chase defendants. *Id.* ¶ 18. Thereafter, plaintiffs submitted mortgage payments and insurance premium payments to the Chase defendants and performed all other obligations required under the mortgage contracts. *Id.* ¶¶ 20, 37. The Chase defendants, however, did not provide plaintiffs with copies of their insurance policies or with

information describing the full nature, amount, or extent of their coverages. *Id.* ¶¶ 19, 32.c.

On September 15, 1995, Hurricane Marilyn struck the Virgin Islands. *Id.* ¶ 21. The Hurricane caused substantial damage to each plaintiff's home and/or other property. *Id.* ¶ 25. Plaintiffs incurred expenses for temporary repairs, landscaping, demolition, and debris removal. *Id.* In addition, some plaintiffs lost rental income due to the damage to their property or were forced to incur rental expenses when their homes became uninhabitable. *Id.*

As a result of the damages and losses caused by Hurricane Marilyn, each plaintiff contacted Chase to obtain information on how to file a claim for insurance coverage. *Id.* ¶ 22. Chase advised plaintiffs that they had insurance coverage and sent adjusters to inspect the damage to plaintiffs' property. *Id.* ¶ 23.

Plaintiffs claim the Chase defendants failed to inform plaintiffs of the full extent of their coverage and failed to pay for all of the losses covered by plaintiffs' insurance policies. *Id.* ¶ 85. Specifically, plaintiffs allege that the Chase defendants did not inform plaintiffs of the existence of "additional" coverage under the insurance policy that Chase procured from Lloyd's. *Id.* ¶¶ 24.a., 25. The "additional" coverage under this policy included coverage for (1) demolition and debris removal costs, (2) landscaping costs, (3) cost of temporary repairs, (4) cost of alternative housing while the insured property remained uninhabitable during the repair/reconstruction period, and (5) lost rental income. *Id.* Likewise, before the hurricane, the Chase defendants did not disclose that plaintiffs could have obtained personal property insurance and increased their dwelling coverage to an amount above their loan balance. *Id.* ¶¶ 54, 55. Moreover, after the hurricane, the Chase defendants continued to insure the mortgaged properties for the full mortgage balance and, together with CAS, charged plaintiffs for that coverage despite the fact that the hurricane damage reduced the value of plaintiffs' properties below their mortgage balances. *Id.* ¶ 26.

On September 23, 24 and 25, 1995, the Chase defendants mailed letters to plaintiffs. In these letters, those defendants represented that they were "... in the process of arranging renewed insurance for [plaintiffs'] mortgaged property through our U.S.V.I. Property Program." *Id.* ¶ 32.e. Plaintiffs allege that this statement was fraudulent. *Id.*

The Chase defendants continued to withhold the complete terms of the insurance policy issued by Lloyd's for the period from July 1, 1995 to June 30, 1996 and "actively sought·to suppress disclosure of· that information." *Id.* ¶ 24(b). As a result of this conduct, plaintiffs state they first became aware of their entitlement to the additional coverage in December 1999 when A. Jeffrey Weiss, Esq., counsel for plaintiffs, obtained copies of a policy pursuant to a subpoena duces tecum issued in another case—*Nibbs v. Chase Manhattan Bank,* No. 96/240 (D.V.I. 1996). Plaintiffs claim this was the first time they "could have become aware of the existence of such 'additional' and 'other' coverages." *Id.* ¶ 44; *see also* Pls.' Resp. at 5 n.3.

Plaintiffs filed this action on July 6, 2001 on behalf of themselves and a putative class consisting of all persons who "held a Chase mortgage on real property in the United States Virgin Islands and who had insurance on their mortgaged property·through the Chase defendants' 'forced placed insurance' program at the time Hurricane Marilyn struck the Virgin Islands on September 15, 1995." *Id.* ¶ 7.a. The Complaint charged Chase and CMMC with negligent misrepresentation (Count I), fraud (Counts II and V), negligence (Counts III, IV and X), breach of contract (Count VI), breach of fiduciary obligation (Count VII), breach of the duty of good faith and fair dealing (Count VIII), bad faith (Count IX), and civil violations of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq..* (Count XI) and the Criminally Influenced and Corrupt Organizations Act ("CICO"), 14 V.I. CODE ANN. § 600 *et seq.* (Count XII). The Complaint charges CAS with negligence (Count IV), fraud (Count V), breach of fiduciary obligation (Count VII), and civil violations of RICO (Count XI) and CICO (Count XII). Plaintiffs seek from defendants (1) compensation for their losses under the additional insurance coverage provided by the Lloyd's Policy, (2) the return of excess insurance premiums paid to defendants after Hurricane Marilyn, and (3) damages for the failure of the Chase defendants to advise plaintiffs of the opportunity to obtain personal property insurance and to increase their dwelling coverage to an amount above their loan balance. Compl. ¶¶ 45, 55-56, 59.

This action was originally assigned to Judge Thomas K. Moore of the District Court for the Virgin Islands, who recused himself. By Order dated September 26, 2001, then Chief Judge Edward Becker assigned the case to this Court pursuant to 28 U.S.C. § 292(b). *See* 28 U.S.C. § 292(b)

("The chief judge of a circuit may, in the public interest, designate and assign temporarily any district judge of the circuit to hold a district court in any district within the circuit.").

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") provides that a defendant may respond to a pleading by raising the defense of "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Therefore, the facts alleged in plaintiffs' Complaint are accepted as true in deciding this motion. A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

When reviewing a motion to dismiss under Rule 12(b)(6) on statute of limitations grounds, the Court exercises plenary review to determine "whether 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations. "'*Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989) (citations and emphasis omitted). Generally, a statute of limitations defense cannot be asserted in the context of a Rule 12(b)(6) motion to dismiss; however, "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994).

In deciding a motion to dismiss, the Court may rely on "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiffs claims are based on the document." *Fralin v. County of Bucks*, No. 03-4263, 2003 U.S. Dist. LEXIS 23829 (E.D. Pa. Dec. 23, 2003). Defendants in this case attached to their Motion to Dismiss copies of the mortgage contracts between Chase and plaintiffs Charleswell, Christian, Jeffries, Creque, Maynard, and Pierre, and argued that the Court should consider the mortgage contracts in deciding the Motion to Dismiss. Defs.' Mot. to Dismiss at 8-10 & Exhibit A (Charleswell Mortgage), Exhibit B (Christian

Mortgage), Exhibit C (Jeffries Mortgage), Exhibit D (Creque Mortgage), Exhibit E (Maynard Mortgage), Exhibit F (Pierre Mortgage). If plaintiffs' claims were based on the mortgages, the Court would do so, but they are not. Plaintiffs' claims are based on oral agreements to provide or procure insurance that are separate from the mortgages. Thus, the Court will consider only the allegations of the Complaint in deciding the Motion to Dismiss.

## IV. DISCUSSION

### A. PLAINTIFFS' CONTRACT CLAIMS

#### 1. Breach of Contract (Count VI)

##### a. Express Contract

Defendants argue that the Court should dismiss the contract claim set forth in Count VI of the Complaint because "plaintiffs have not, and cannot, allege any breach of the only contract that exists between plaintiffs and Chase—their mortgage contracts." Defs.' Motion at 7 (footnote omitted). According to defendants, there can be no breach of contract because the mortgage contracts do "not impose on Chase the obligation to provide 'adequate insurance coverage,' or any of the other obligations alleged" by plaintiffs in the Complaint. Defs.' Reply at 4; *see also* Defs.' Motion at 8. The Court rejects this argument.

"Although offer, acceptance, and consideration are required elements of contract formation, the decisive inquiry in contract formation is the manifestation of assent of the parties to the terms of the promise and to the consideration for it." *Morton v. Hewitt*, 202 F. Supp. 2d 394, 396 (D.V.I. 2002) (quoting *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 665 (3d Cir. 1998) (internal quotations omitted). "It is well-settled law that 'the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced.'" *Id.*

The Virgin Islands courts have not specifically addressed the question of what must be agreed upon by the parties in the context of an action for breach of a contract to procure or provide insurance. In the absence of local law and guidance from the Restatement of Law [the Restatement provides no such guidance], the rules of common law "as generally

507

understood and applied in the United States" are the rules of decision in the Virgin Islands. 1 V.I.C. § 4.

Most courts require that the parties to a contract to procure or provide insurance agree upon a number of essential elements for the contract to be enforceable. It is not necessary for plaintiffs to produce evidence of a written agreement with defendants to procure or provide insurance, but "[t]he essentials necessary to establish an oral contract of insurance are the same as if it were in writing including subject matter, risk insured against, amount of insurance, premium rate, risk duration, and identity of parties." COUCH ON INSURANCE 3d § 13:18; *see also* 22 V.I.C. § 814(b)(1) (requiring that insurance policies state parties, subject, risk insured against, duration, and premium); *Agape Baptist Church Inc. v Church Mut. Ins. Co.*, 299 F.3d 701, 704 (8th Cir. 2002), *Southtrust Bank v. Exhort Ins. Sews., Inc.*, 190 F. Supp. 2d 1304, 1307 (M.D. Fla. 2002), *Howarth v. First Nat'l Bank of Anchorage*, 596 P.2d 1164, 1168 (Alaska 1979), *Pimentil v. Milo Brooke, Inc.*, 136 N.E.2d 608, 610 (Ill. App. Ct. 1956), *Bulla v. Donahue*, 366 N.E.2d 233, 236 (Ind. Ct. App. 1977), *Hartford Accident & Indem. Co. v. Middlesboro-LaFollette Bus Line, Inc.*, 357 S.W.2d 671, 672 (Ky. 1962), *GRP, Ltd. v. United States Aviation Underwriters, Inc.*, 261 N.W.2d 707, 709 (Mich. 1978), *Green Mountain Ins. Co. v. Bonney*, 561 A.2d 1057, 1060 (N.H. 1989), *Glens Falls Ins. Co. v. Johnson*, 403 P.2d 229, 233 (Okla. 1965), *First Prot. Life Ins. Co. v. Compton*, 335 S.E.2d 262, 264 (Va. 1985). "It is not necessary that every term of the contract be expressed, some terms may be implied from previous dealings between the parties and surrounding circumstances." COUCH ON INSURANCE 3d § 13:19; *see also Agape Baptist Church, Inc.*, 299 F.3d at 704, *Globe & Rutgers Fire Ins. Co. v. Draper*, 66 F.2d 985, 988 (9th Cir. 1933), *Southtrust Bank*, 190 F. Supp. at 1307, *Howarth*, 596 P.2d at 1167, *Pimentil*, 136 N.E.2d at 609, *Bulla*, 366 N.E.2d at 236, *Hartford Accident & Indem. Co.*, 357 S.W.2d at 673, *GRP, Ltd.*, 261 N.W.2d at 709, *Green Mountain Ins. Co.*, 561 A.2d at 1060, *First Prot. Life Ins.*, 335 S.E.2d at 265.

The Complaint sufficiently alleges that the Chase defendants agreed "to provide adequate insurance coverage" on each plaintiff's property and that plaintiffs paid insurance premiums to the Chase defendants. Compl. ¶ 68. Specifically, according to the Complaint, the Chase defendants "obtained a bulk pool of insurance coverage" and then billed plaintiffs "at rate which was in excess of the bulk insurance costs."

Compl. ¶ 69. What is not so clear from the Complaint are the terms of the insurance agreements.

■ At this stage of the litigation, it is not necessary for the plaintiffs to demonstrate that there was an express agreement on all relevant terms. It is sufficient that plaintiffs have alleged agreements were reached concerning the subject matter of the insurance, the parties to the agreement, and the premiums for the coverage. The parties to the contracts were the Chase defendants and plaintiffs. *Id.* ¶ 68. The subject matter of the contracts was the property owned by each plaintiff and mortgaged to Chase. *Id.* ¶ 16(b). Because insurance premiums would have been different for each plaintiff, it is sufficient for plaintiffs to allege that the Chase defendants billed plaintiffs for insurance coverage and plaintiffs paid those bills. *Id.* ¶ 20. Plaintiffs will be given an opportunity during discovery to seek evidence of the other elements required to establish a contract to procure or provide insurance.

### b. Promissory Estoppel

Although not briefed, the Court relies on promissory estoppel as an alternative ground for plaintiffs' contract claim. Virgin Islands decisions do not address the enforceability of a promise to procure insurance by a mortgage holder but the issue is covered by the Restatement (Second) of Contracts. In the absence of local law to the contrary, the Restatement of Law provides the rule of decision in the Virgin Islands. 1 V.I. CODE ANN. § 4. Thus, this Court will rely, *inter alia*, on the RESTATEMENT in analyzing this issue.

■ To establish a claim for promissory estoppel under the Restatement (Second) of Contracts, the plaintiff must plead and prove (1) the promisor made a promise that he should have reasonably expected to induce forbearance; (2) the promisee refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. RESTATEMENT (SECOND) OF CONTRACTS § 90. One of the illustrations to this section describes a situation that is analogous to the allegations made by plaintiffs in this case:

> A, a bank, lends money to B on the security of a mortgage on B's new home. The mortgage requires B to insure the property. At the closing of the transaction, A promises to arrange for the required insurance, and in reliance on the promise B fails to insure. Six

months later the property, still uninsured, is destroyed by fire. The promise is binding.

RESTATEMENT (SECOND) OF CONTRACTS § 90, cmt. e, illus. 13.

One court that surveyed decisions applying this provision of the RESTATEMENT determined that "the weight of this authority holds that [oral promises made by a mortgagee to obtain insurance] are actionable." *Shoemaker v. Commonwealth Bank,* 700 A.2d 1003, 1007 (Pa. Super. Ct. 1997) (citing *Graddon v. Knight,* 138 Cal. App. 2d 577 (Cal. Ct. App. 1956), *Franklin Inv. Co. v. Huffman,* 393 A.2d 119, 122 (D.C. 1978), *East Providence Credit Union v. Geremia,* 239 A.2d 725, 727-28 (R.I. 1968), *Estes v. Lloyd Hammerstad, Inc.,* 503 P.2d 1149, 1152 (Wash. 1972)). The *Shoemaker* case is particularly apposite. In that case, Commonwealth Bank held a mortgage on the Shoemakers' property; the mortgage agreement required the Shoemakers to maintain insurance. *Id.* at 1104. When the Shoemakers' insurance expired, the Shoemakers alleged that Commonwealth Bank promised it would purchase "adequate insurance" and add the cost of this insurance to the Shoemakers' loan. *Id.* at 1006. Based on the RESTATEMENT and authority from other jurisdictions, the *Shoemaker* court held that a mortgagor who was obligated to maintain insurance on his property could enforce an oral promise made by the mortgagee to obtain the insurance. *Id.* at 1006.

■ Plaintiffs have plead all the elements of promissory estoppel required by the RESTATEMENT (SECOND) OF CONTRACTS § 90. First, according to the Complaint, the Chase defendants promised to procure "adequate insurance," and they should have expected that plaintiffs would not procure their own insurance after this assurance. Compl. ¶¶ 10, 20. Second, plaintiffs allege they did not procure their own insurance. *Id.* Third, given the severe damage to their homes and other properties, it would be unjust for plaintiffs to receive less than they are entitled to receive under the insurance policy or policies obtained by the Chase defendants.

## 2. Breach of the Implied Contractual Duty of Good Faith and Fair Dealing (Count VIII)

■ Under the RESTATEMENT (SECOND) OF CONTRACTS § 205, titled "Duty of Good Faith and Fair Dealing," "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its

enforcement." Plaintiffs allege that the Chase defendants breached their duty of good faith and fair dealing by misleading plaintiffs "... as to the nature and extent of their insurance coverages after Hurricane Marilyn, while at the same time informing selected mainland customers of said coverages and in some instances even backdating policies for them, and by invoicing plaintiffs and the Class for excessive and unnecessary insurance after September 15, 1995." *Id.* ¶ 81. Plaintiffs further allege that "[i]n so doing, the defendants have acted arbitrarily, capriciously, and in a manner inconsistent with the reasonable expectations of the plaintiffs and the Class, and thereby breaching the covenant of good faith and fair dealing." *Id.* ¶ 82.

Defendants argue that the Court should dismiss plaintiffs' claim for breach of this duty in Count VIII of the Complaint because plaintiffs do not allege that the Chase defendants deprived plaintiffs of any right under the mortgage agreements, the only operative contracts between them. This argument repeats defendants' contention that their only contracts with plaintiffs were the mortgage contracts, and under the mortgages, they had no obligation to procure or provide insurance. Defs.' Motion at 12. The Court rejects this argument on the ground that, under plaintiffs' allegations, the Chase defendants owed plaintiffs a duty of good faith and fair dealing with respect to the mortgages and the separate agreements to procure or provide insurance.

Plaintiffs' allegations are strikingly similar to those made in *Boehm v. Chase Manhattan Bank*, No. Civ. 1999/0209, 2002 U.S. Dist. LEXIS 25238, at *14 (D.V.I. Dec. 30, 2002). That case also arose from Chase's practice of force-placing insurance for Virgin Islands mortgage customers. *Id.* at *1. The plaintiff in *Boehm* alleged that Chase agreed to provide insurance on her mortgaged property. After Hurricane Marilyn damaged Boehm's property, Chase denied that there was insurance coverage on the property. Thereafter, Boehm learned that the property was, in fact, insured through Chase and she filed suit. *Id.* at *2. Chase moved to dismiss the complaint, arguing that nothing in the mortgage agreement required Chase to purchase insurance for the plaintiff's benefit. The *Boehm* court denied the motion, ruling that there was "no question" that allegations that Chase required Boehm to pay for insurance coverage and then denied that such coverage existed stated a claim for breach of the implied covenant of good faith and fair dealing. *Id.* at *15-16. According to the court, once Chase agreed to procure

insurance for Boehm, it was required to fulfill this obligation in good faith. *Id.*

The Court agrees with the analysis and ruling of the *Boehm* court. Plaintiffs have alleged that the Chase defendants agreed to procure or provide insurance on their property. If proven, the Chase defendants were required to fulfill this obligation in good faith. Allegations that the Chase defendants misled plaintiffs as to the extent of their insurance coverage after Hurricane Marilyn, treated Virgin Islands customers different from "selected mainland customers," and billed plaintiffs for "excessive and unnecessary insurance" after Hurricane Marilyn state a claim for breach of the duty of good faith and fair dealing upon which relief can be granted. Thus, the motion is denied as to Count VIII.

## B. THE STATUTE OF LIMITATIONS APPLICABLE TO PLAINTIFFS' TORT LAW, RICO AND CICO CLAIMS ASSERTED IN COUNTS I, II, III, IV, V, VII, IX, X, XI, AND XII.

Defendants next argue that plaintiffs' tort claims for negligent misrepresentation, breach of fiduciary duty, bad faith, negligence, fraud, and claims for civil violations of RICO and CICO must be dismissed because they are barred by the applicable statutes of limitations. Defs' Motion at 13.

Under Virgin Islands law, plaintiffs' tort law claims for negligent misrepresentation (Count I), breach of fiduciary duty (Count VII), bad faith (Count IX), negligence (Counts III, IV and X) and fraud (Counts II and V) are governed by a two-year statute of limitations. 5 V.I. CODE ANN. § 31(5)(A); *see also Tradewinds, Inc. v. Citibank, N.A.*, 20 V.I. 152, 157 (D.V.I. 1983) (holding that two-year statute of limitations applies to causes of action for fraud, misrepresentation, and breach of fiduciary duty).

Normally, under Virgin Islands law, the "statute of limitations begins to run upon the occurrence of the essential facts which constitute the cause of action." *Simmons v. Ocean*, 544 F. Supp. 841, 843 (D.V.I. 1982). However, "Virgin Islands law has in certain circumstances adopted the discovery rule to delay the running of the statute of limitations." *In re Tutu Wells Contamination Litig.*, 909 F. Supp. 980, 984 (D.V.I. 1995). In order to invoke the discovery rule, a plaintiff must demonstrate (1) when the plaintiff knew or should have known that he

suffered a harm and (2) when the plaintiff knew or should have known the cause of his injury. *Id.* at 985.

The RICO statute does not contain an express statute of limitations provision; however, the Supreme Court, in *Agency Holding Corgi v. Malley-Duff & Assocs.*, 483 U.S. 143 (1987), held that a RICO cause of action has a four-year statute of limitations. *Id.* at 152. The limitations period for RICO claims begins to run once a plaintiff discovers her injury. *See Forbes v. Eagleson*, 228 F.3d 471, 485 (3d Cir. 2000).

The statute of limitations for CICO is five years. See 14 V.I. CODE ANN. § 607(h). Because "CICO is cast in the mold of the federal RICO statute," the Court will apply the discovery rule applicable to RICO claims in determining when plaintiffs' CICO claims accrued. *Pemberton Sales & Serv., Inc. v. Banco Popular de P.R.*, 877 F. Supp. 961, 970 (D.V.1. 1994)

In this case, plaintiffs seek recovery for: (1) the Chase defendants' failure to inform plaintiffs of the existence of additional insurance coverage contained in the Lloyd's Policy, (2) the billing of excessive insurance premiums after Hurricane Marilyn, and (3) the Chase defendants' failure to advise plaintiffs of the opportunity to obtain personal property insurance and to increase their dwelling coverage to an amount above their mortgage loan balance. Compl. ¶¶ 44, 45, 54, 59. According to plaintiffs, the Chase defendants' active suppression of the Lloyd's insurance policy and the terms of their insurance coverage prevented plaintiffs from discovering their injuries.

The Court concludes that disclosure of the Lloyd's insurance policy to plaintiffs' attorney in December of 1999 provided plaintiffs with sufficient facts to start the running of the statute of limitations. This ruling is consistent with *Boehm* which held that, due to Chase's denial of the existence of insurance coverage, the statute of limitations did not begin to run until Boehm received notice from Chase that she was covered by an insurance policy. *Boehm*, 2002 U.S. Dist. LEXIS 25238, at *4. According to the *Boehm* court, Chase's forced placement of insurance and refusal to pay the claim could not have apprised Boehm of the details of her insurance coverage or the extent of her injuries because Chase did not provide her with a copy of her insurance policy. *Id.* Similarly, based on the Complaint in this case, plaintiffs had no way of learning the extent of their injuries until they received a copy of the Lloyd's policy from their counsel in December 1999. Compl. ¶ 44.

Contrary to defendants' argument, plaintiffs' failure to allege the precise date when they obtained a copy of the Lloyd's insurance policy is not fatal to their claims because any date in December 1999 would have been within the two-year statute of limitations for plaintiffs' tort claims, the shortest statute of limitations at issue in this case. Defs.' Mot. at 16. In this respect, this case is unlike *Old Orchard Bank & Trust Co. v. Josefik*, 72 B.R. 393 (Bankr. N.D. 111. 1987), the case relied upon by defendants. In *Josefik*, the court dismissed a complaint as time-barred due to plaintiff's failure to allege the specific date on which it discovered the injury. The court explained that ruling on the ground that plaintiff "was under a duty to specifically plead in its complaint facts necessary to explain why the discovery of its cause of action did not occur sooner." *Id.* at 401. In this case, however, plaintiffs allege sufficient facts in the Complaint to explain why the discovery of their cause of action did not occur sooner—they allege that they were not aware of their injury until December of 1999 due to the Chase defendants' refusal to disclose the terms of the Lloyd's insurance policy. The plaintiffs filed this action on July 6, 2001; therefore, any date in December 1999 would be within the two year time period.

▮ Thus, the Court rules that Counts I, II, III, IV, V, VII, IX and X of plaintiffs' Complaint, alleging tort claims for negligent misrepresentation, breach of fiduciary duty, bad faith, negligence and fraud, and Counts XI and XII of plaintiffs' Complaint, alleging claims for civil violations of RICO and CICO, respectively, are not barred by the applicable statute of limitations. That ruling is without prejudice to defendants' right to address the statute of limitations issues by motion for summary judgment after completion of relevant discovery and/or at trial.[2]

---

[2] In light of the Court's ruling that plaintiffs have alleged sufficient facts to demonstrate that the earliest time period that plaintiffs could have discovered their injury was December 1999, the Court need not consider plaintiffs' arguments that their tort claims and RICO and CICO claims are timely under a theory of fraudulent concealment. Pls' Response at 42-46.

514

## C. PLAINTIFFS' CLAIMS FOR NEGLIGENT MISREPRESENTATION, NEGLIGENCE, FRAUD, BREACH OF FIDUCIARY DUTY AND BAD FAITH AS ALLEGED IN COUNTS I, II, III, IV, V, VII, IX, AND X.

### 1. Chase Defendants' Duty

Defendants next argue that the Court should dismiss plaintiffs' tort claims because "plaintiffs cannot establish that the Chase defendants owed plaintiffs any independent duty regarding property insurance separate from the contractual duties set forth in the mortgage contracts." Defs.' Motion at 19. Defendants also argue that these claims should be dismissed because the duties alleged in the Complaint arise only in the context of an insurer-insured relationship, and the plain terms of the Lloyd's policy establishes that the Chase defendants were not insurers of plaintiffs' property. Defs.' Motion at 19, 23, 24-25.

The Court agrees with defendants that "the mere negligent breach of contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Jo-Ann's Launder Ctr., Inc. v. Chase Manhattan Bank, N.A.*, 854 F. Supp. 387, 392 (D.V.I. 1994) (quoting *Jacques v. First Nat'l Bank*, 515 A.2d 756, 759 (Md. 1986)). In *Jo-Ann's Launder Center*, the District Court for the Virgin Islands dismissed plaintiff's tort claims because plaintiff failed to allege "any special obligations" that did not arise from the contract. *Id.* at 392. On the other hand, Virgin Islands courts have found that a lender can owe a borrower a duty when a "special relationship exists," for example, when a lender has "substantial control over the borrower's business affairs." *Fin. Trust Co., Inc. v. Citibank, N.A.*, 268 F. Supp. 2d 561, 573 (D.V.I. 2003) (finding that relationship between plaintiffs and defendants was not the "'garden variety' at arms-length banking relationship").

Plaintiffs argue that the Virgin Islands Insurance Code imposes duties on defendants as participants in the business of insurance that are independent of the parties' insurance agreements and these duties give rise to such a "special relationship." Pls' Resp. at 18. According to the Code, "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured and their representatives rests the duty of

preserving inviolate the integrity of insurance." 22 V.I. CODE ANN. § 2. The Code broadly defines "insurance transactions" to include virtually all activities from the beginning to the end of the insurance relationship, including, *inter alia*, (1) solicitation, (2) negotiations preliminary to execution of an insurance contract, (3) execution of an insurance contract, (4) transaction of matters subsequent to execution of the contract and arising out of it, and (5) insuring. 22 V.I. CODE ANN. § 5.

Based on the allegations of the Complaint, the Chase defendants are covered by 22 V.I.C. ANN. § 2 as insurers, insurance brokers, or both. The Complaint refers to the Chase defendants as both an "unlicensed insurance company" and "broker" but does not consistently allege whether the Chase defendants acted as insurers, brokers, or both. Compl. ¶ 16(c). For example, in one paragraph of the Complaint, plaintiffs allege they purchased insurance *from* defendants, which would make defendants insurers. *Id.* ¶ 18. In another paragraph, the Complaint states that the Chase defendants *procured* insurance coverage for plaintiffs, which would make the Chase defendants brokers. *Id.* ¶ 20. Thus, the Court will address whether the Chase defendants owed plaintiffs a duty sufficient to sustain tort liability as insurers or insurance brokers.

The Virgin Islands Code defines an insurer as "a corporation or association which is engaged as principal in the business of making contracts of insurance." 22 V.I.C. § 4. "Insurance is a contract whereby one party undertakes to indemnify another for loss, damage, or liability, or to pay or provide a specified or ascertainable benefit, upon determinable contingencies." 22 V.I.C. § 5.

Virgin Islands courts have not addressed the question of whether a mortgagee who provides insurance for a mortgagor can be held liable in tort as an insurer. "In the absence of an opinion from a state's highest court on a matter of state law, a federal court determining state law must predict how that court would rule on the matter if confronted with it." *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 234 (3d Cir. 2003). According to one author, "[c]ourts which have considered the matter have recognized that a mortgagee *may* have a duty to obtain or maintain casualty insurance protecting the mortgagor even where the mortgagee did not agree to such an undertaking in the contract of mortgage." Randy R. Koenders, *Duty of Mortgagee of Real Property with Respect to Obtaining or Maintenance of Fire or Other Casualty Insurance Protecting Mortgagor*, 42 A.L.R. 4th 188 § 2[a] (1985) (emphasis

added). Among other factors used to determine when this duty arises, courts have pointed to (1) oral agreements by the mortgagee to procure insurance, (2) the mortgagee's collection of insurance premiums, and (3) the possession of the policy by the mortgagee as factors in determining that the mortgagee assumed a duty to a mortgagor. *Id.*

Plaintiffs include some of these factors in the Complaint. See *supra* § IV.A. 1. First, plaintiffs allege the Chase defendants agreed to provide plaintiffs with adequate insurance-the Chase defendants solicited their insurance business and then provided insurance. Compl. ¶¶ 18, 16(c). Second, plaintiffs contend they paid insurance premiums to the Chase defendants, submitted claims to the Chase defendants, and the Chase defendants sent adjusters to inspect the

damage to their homes after Hurricane Marilyn. *Id.* ¶¶ 16(c), 22, 23. Third, plaintiffs allege the Chase defendants retained plaintiffs' insurance policies. *Id.* ¶ 19. Moreover, plaintiffs dealt directly with the Chase defendants and were unaware of the Chase defendant's relationship with any other insurance company until plaintiffs discovered a copy of the Lloyd's policy pursuant to a subpoena in another case. *Id.* ¶ 44. If proven, these allegations establish that the Chase defendants held themselves out to plaintiffs as insurers and had a duty to provide the agreed upon insurance.

Alternatively, plaintiffs allege the Chase defendants were insurance brokers because they agreed to procure insurance for plaintiffs. Under Virgin Islands law, a broker is defined as a "person who, on behalf of the insured, for compensation ... and not being an agent of the insurer, solicits, negotiates, or procures insurance or reinsurance or the renewal or continuance thereof, or in any manner aids therein, for insureds or prospective insureds other than himself." 22. V.I.C. ANN. § 751(c). An insurance broker, "who with a view to compensation for his services, undertakes to procure insurance coverage for another and through fault or neglect fails to do so, could be held liable for any damages resulting therefrom." *Towers Condo. Assn. v. C.E. Brathwaite and Assocs., Inc.*, 40 V.I. 33, 42 (1999). In examining this question, Virgin Islands courts consider the following factors: (1) who called the intermediary into action; (2) who controls the actions of the intermediary; (3) who pays the intermediary; and (4) whose interests the intermediary represents. *Id.* at 42. In addition, the *Towers* court found it significant that the plaintiff did not direct the defendant, the alleged broker, to obtain coverage from a

particular insurer and the defendant could have placed the plaintiff's insurance business with several different insurance companies.

██ According to the Complaint, the Chase defendants solicited plaintiffs insurance business and procured insurance for plaintiffs. Compl. ¶¶ 18, 24(a). Plaintiffs allege that the Chase defendants received compensation for this service by charging plaintiffs more for insurance coverage than it cost them for the insurance. *Id.* ¶¶ 16(c), 69. Although plaintiffs did not call the Chase defendants into action or control the actions of the Chase defendants, it is not alleged that the Chase defendants were agents of another insurer. To the contrary, according to the Complaint, plaintiffs left the Chase defendants with discretion to choose an insurer and only expected the Chase defendants to procure "adequate insurance." *Id.* ¶ 18. Finally, plaintiffs paid premiums to the Chase defendants. *Id.* ¶ 20. If proven, plaintiffs' allegations are sufficient to establish that the Chase defendants held themselves out as insurance brokers and had a duty to procure the agreed-upon insurance.

Defendants reliance on *Barbel v. Chase Manhattan Bank*, Bankr. No. 399-00005, Adv. No. 300-00004, slip op. at 9 (Bankr. D.V.I. Nov. 7, 2001), a decision by the Virgin Islands Bankruptcy Court, for the proposition that they did not owe plaintiffs a duty is misplaced. In *Barbel*, the bankruptcy court concluded that Chase did not owe a duty of care to mortgagors who purchased forced placed insurance from the bank. However, the *Barbel* court distinguished cases where the mortgagee promised to obtain insurance and failed to do so. *Id.* at 10. Moreover, in *Barbel*, there was no evidence that Chase undertook to provide Barbel with any service gratuitously or for consideration. That case involved forced placement of insurance by Chase to protect its own interest only. *Id.* at 9. In contrast, plaintiffs in this case allege that the Chase defendants affirmatively represented that they would obtain "adequate" insurance for the plaintiffs. Compl. ¶ 20. That representation distinguishes this case from *Barbel* and is sufficient to impose a duty of reasonable care on defendants.

### 2. Gist of the Action

Defendants also argue that plaintiffs' tort claims should be dismissed because the gist of the plaintiffs' action is based in contract and contract remedies are sufficient to redress plaintiffs' injury. Defs.' Motion at 21. The Court rejects this argument.

According to one Virgin Islands court, albeit in a footnote, "'A tort claim may be maintained only when the wrong ascribed to defendant ... is the gist of the action, the contract being collateral.'" *Bell v. Chase Manhattan Bank*, 40 F. Supp. 2d 307, 319 n.20 (D.V.I. 1999) (quoting *Mann v. J.E. Baker Co.*, 733 F. Supp. 885, 888 (M.D. Pa. 1990)). Other than this footnote, Virgin Islands courts have not discussed the gist of the action test. However, based on the favorable citation of Third Circuit precedent in the *Bell* case, this Court predicts that Virgin Islands courts would adopt the Third Circuit's application of the gist of the action test.

The gravamen of plaintiffs' allegations in this case sound in contract—breach of the agreement to provide or procure adequate insurance. The Third Circuit applies the gist of the action test to determine when Pennsylvania courts would consider a tort claim barred because a plaintiff s remedy lies only in contract. *See Bohler-Uddeholm America Inc. v. Ellwood Group*, Inc., 247 F.3d 79, 103 (3d Cir. 2001).

The gist of the action test is used "to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract." *Bohler-Uddeholm America Inc.*, 247 F.3d at 103. "[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Id.* "[T]he gist of the action test requires the court to determine from the complaint the essential nature of the claim alleged by distinguishing between contract and tort claims on the basis of source of the duties allegedly breached; if the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based." *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833 (E.D. Pa. 2000).

However, "[c]aution must be exercised in dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry." *Haymond v. Lundy*, No. 99-5015, 2000 U.S. Dist. LEXIS 8585, at *24 (E.D. Pa. June 22, 2000). Even when the facts asserted in support of tort and contract claims are similar, courts in this district have been reluctant to dismiss claims on this basis without a factually intensive inquiry. *CH&H Pennsylvania*

*Prop., Inc. v. Heffernan*, No. 03-2349, 2003 U.S. Dist. LEXIS 14736, at *18 n.6 (E.D. Pa. Aug. 19, 2003).

It is especially inappropriate to dismiss a tort claim as duplicative of a contract claim when the contours of the agreement at issue are not clear. In *Mill Run Assocs. v. Locke Prop. Co., Inc.*, 282 F. Supp. 2d 278, 291 (E.D. Pa. 2003), "one of the primary issues between the parties [was] whether the Agreement, the Agreement with oral modifications, or some other agreement, existed between the parties." As a result, the court declined to dismiss tort claims under the gist of the action doctrine because at the dismissal stage of the litigation in that case it was not clear whether the gist of the plaintiff's action sounded in contract or tort. *Id.*

██ Plaintiffs' claims in this case are based on oral agreements. Like *Mill Run*, at this stage of the litigation, it is impossible to determine the contours of the agreements, let alone whether the gist of plaintiffs' causes of action sounds in contract or tort. Moreover, there are exceptions to the gist of the action rule such as breach of fiduciary duty which is alleged in the Complaint and may or may not be established by the evidence. Thus, the Court rejects defendants' argument on this issue and will not dismiss plaintiffs' tort claims under the gist of the action test.

### 3. Negligent Misrepresentation (Count I)

Defendants argue that the Court should dismiss plaintiffs' claim for negligent misrepresentation in Count I of the Complaint because "[p]laintiffs' negligent misrepresentation claim alleges that Chase failed to provide certain information, rather than allege a false representation by Chase." Defs.' Motion at 27. The Court agrees with defendants' argument on the ground that plaintiffs fail to allege that the any of the defendants made an express, false representation regarding insurance coverage.

██ To assert a claim for negligent misrepresentation, plaintiffs must allege: (1) that defendants supplied false information; (2) that the information was supplied in the course of defendants' business; (3) that plaintiffs were guided by the information in their business transactions; (4) that plaintiffs suffered pecuniary loss as a result of their justifiable reliance upon the information; and (5) that defendants failed to exercise reasonable care or competence in obtaining or communicating the information. *See In re Tutu Water Wells Contamination Litig.*, 32 F.

Supp. 2d 800, 807 (D.V.I. 1998) (citing RESTATEMENT (SECOND) OF TORTS § 552). In addition, "[t]he tort of negligent misrepresentation requires an *express* representation which is false or misleading at the time it is made." *L.E.B. Enters., Inc. v. Barclays Bank, P.L.C.*, 33 V.I. 42, 46 (1995) (emphasis in original). In *L.E.B.*, the court rejected an argument that Barclays could be liable for negligent misrepresentation for a failure to disclose information in response to a request for a credit check of a potential customer. *Id.* Although the *L.E.B.* express representation requirement has not been consistently followed by Virgin Islands courts, this Court will apply it to the facts of the case. *Cf. Fin. Trust Co., Inc. v. Citibank, N.A.*, 268 F. Supp. 2d 561, 574 (D.V.I. 2003) (denying motion to dismiss claim based on defendant's failure to disclose conflict of interest without discussion of express representation requirement), *In re Tutu Water Wells Contamination Litig.*, 78 F. Supp. 2d 456, 464 (D.V.I. 1999) (denying motion to dismiss based on defendant's failure to disclose intention to initiate litigation without discussion of express representation requirement).

▓▓ Plaintiffs' failure to allege any affirmative, false representations requires that their negligent misrepresentation claim be dismissed. Plaintiffs's claim of negligent misrepresentation is based on allegations that "Chase and CMMC were negligent in failing to adequately advise plaintiffs that they had insurance coverage for more than only building repairs." Compl. ¶ 40. In their own words, "plaintiffs allege negligent misrepresentation by the Chase defendants for *failing to advise* plaintiffs they were only insured for the unpaid mortgage balance, and also for *failing to advise* them of the scope and extent of the coverages Chase procured for them." Pls.' Reply at 15 (emphasis added). Those allegations are insufficient to state a claim for negligent misrepresentation under Virgin Islands Law. Thus, the Court dismisses Count I but will grant plaintiffs leave to file an amended complaint including a claim of negligent misrepresentation if warranted by the circumstances and deemed necessary by plaintiffs.

### 4. Fraud (Counts II and V)

Defendants next argue that the Court should dismiss plaintiffs' claims for fraud in Counts II and V of the Complaint "because the Complaint wholly fails to plead the circumstances of the alleged fraud with

particularity, in violation of [Federal] Rule [of Civil Procedure] 9(b)."
Defs' Mem. at 29. The Court rejects this argument.

 Under Virgin Islands law, in order to state a claim for common law fraud, plaintiffs must allege (1) a false representation of material fact, (2) the defendant's intent that the statement be acted upon, (3) reliance upon such a statement by the persons claiming to have been deceived, and (4) damages. *In re Tutu Water Wells Contamination Litig.*, 32 F. Supp. 2d at 805 (D.V.I. 1998); *Jo-Ann's Launder Ctr.*, 854 F. Supp. at 392. Liability for fraud can be based on a defendant's failure to disclose. *Bank of America, N.A. v. Moyer*, 18 V.I. 220, 226-7 (1982) (citing RESTATEMENT (SECOND) OF TORTS § 551). In addition to alleging facts sufficient to support these elements, a plaintiff must satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake should be stated with particularity." FED. R. CIV. P. 9(b).

Virgin Islands decisions require information concerning the time, place, content of the misrepresentation, and identity of the person making the misrepresentation. *Tradewinds, Inc. v. Citibank, N.A.*, 20 V.I. 152, 160 (1983); *Francis v. Graham Miller Ltd.*, 26 V.I. 184, 187 (1991). The Third Circuit, however, does not require date, time, and place allegations, provided that the plaintiff gives the defendants other means of precision and substantiation. *Seville Indus. Mach.Corp. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985). As long as the defendant has "fair notice" of the charges against him, the purpose of Rule 9(b) has been satisfied. *United States v. Warning*, No. 93-4541, 1994 U.S. Dist. LEXIS 10402, at *2 (E.D. Pa. July 26, 1994) (citing *United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1126 (E.D. Pa. 1991)).

Plaintiffs set forth two separate claims for common law fraud in Counts II and V of the Complaint. In Count II, plaintiffs allege that "[b]y withholding the insurance contracts from plaintiffs and the Class, and by failing to inform them of their coverages at the time they were making insurance claims, the Chase defendants intended that plaintiffs and the Class rely on their false and inaccurate representations as to the nature and extent of the insurance coverage provided." Compl. ¶ 48. In Count V, plaintiffs allege that "[a]fter September 15, 1995, the Chase defendants and CAS fraudulently invoiced and charged plaintiffs and the

Class members for insurance coverage on their mortgaged properties, which said defendants knew or should have known was unnecessary and excessive." *Id.* ¶ 63. According to plaintiffs, they "accepted" defendants' "representations that said coverage amounts were appropriate and/or required." *Id.* ¶ 64.

Plaintiffs' fraud claims in Counts II and V are buttressed by the factual allegations relating to Counts XI and XII. In those counts, plaintiffs allege that the Chase defendants sought to obtain increased premium rates by "intentionally misrepresenting the actual costs of said insurance." *Id.* ¶ 32(b). Further, it is alleged that the Chase defendants sent letters on September 23, 24, and 25, 1995 asserting that they were arranging for renewed insurance when they had already renewed "hundreds" of policies. *Id.* ¶ 32(e). These letters also "falsely" asserted that the Chase defendants were *now* allowing customers to increase insurance coverage above their remaining mortgage balance. According to plaintiffs, expanded coverage actually became available on July 1, 1995, but such defendants misrepresented this date to policy holders, such as Linda Morgan, Esq., to induce them to settle their insurance claims. This date is significant because plaintiffs would have been able to increase their insurance coverage before Hurricane Marilyn if this option was available in July. *Id.* ¶ 32(g). In amplifying these allegations, plaintiffs state that defendants attempted to "cover up" the true amount of coverage because they did not have the "reinsurance" necessary to pay the additional nine to fourteen million dollars in claims that this coverage would have provided plaintiffs. *Id.* ¶ 98.

Allegations relating to affirmative misrepresentations to the Virgin Islands Government are also set forth in detail. Plaintiffs allege that the Chase defendants "actively misrepresented to the Virgin Islands Division of Banking and Insurance ... that their Property Insurance Program would insure both the interests of homeowners and the interests of the Chase defendants in the property, when in fact the Chase defendants · only secured enough insurance for each property to protect their mortgage loan interest in the property." Compl. ¶ 32(a).

█ The Court concludes that plaintiffs have sufficiently alleged the elements of fraud required under Virgin Islands law. Allegations that defendants misrepresented the cost of insurance in Count V and failed to disclose details of plaintiffs' insurance coverage in Count II are sufficient to satisfy the first element of common law fraud-false representation of

material fact. *Id.* ¶¶ 32(b), 48. It is clear from the nature of the allegations that the Chase defendants intended that plaintiffs rely on these false representations. *Id.* ¶ 98. Plaintiffs allegedly relied on the Chase defendants' misrepresentations when they agreed to purchase insurance from these defendants and paid Chase defendants and CAS for more insurance coverage than was necessary after their properties were damaged by Hurricane Marilyn. *Id.* ¶¶ 18, 37, 50. Plaintiffs' allegations that they did not receive payment for all the losses covered by the insurance policy and paid excessive premiums after the hurricane address the damages element of common law fraud. *Id.* ¶ 25.

■ Defendants argue that plaintiffs fail to satisfy the requirements of Rule 9(b) because they do not state "the identity of the person making the representation." Defs.' Mot. at 28-29, 34, Defs.' Reply at 13, 14. The Court disagrees and concludes that the fraud counts should not be dismissed because of plaintiffs' failure to identify the individual or individuals responsible for the misrepresentations. *See ATI Ctrs., Inc. v. ATI Resources. Inc.*, No. 99-734, 1999 U.S. Dist. LEXIS 12239 (E.D. Pa. Aug. 2, 1999) (stating that fraud claim should not be dismissed solely for the failure to identify the speaker or recipient of a misrepresentation).

■ Defendants' reliance on *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998) is misplaced. In *Rolo*, the Third Circuit affirmed a decision to dismiss a fraud allegation for failure to plead with particularity because "[t]he content of the mailings [was] described in reasonably specific terms, but when, by whom, and to whom a mailing was sent, and the precise content of each particular mailing [were] not detailed." *Id.* at 658-59. Unlike *Rolo*, this case is not primarily about what defendants' said—the case focuses on what they did not say. Plaintiffs' fraud allegations are based, in large part, on omissions and failure to disclose. "[I]n cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the [particularity] rule when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Secs. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (citation omitted). Relaxing the particularity requirement is particularly appropriate in this type of case when it is alleged that the factual information is exclusively within the defendants' control because of active suppression by the defendants.

The Court also rejects defendants' argument that the fraud counts should be dismissed because the Complaint does not allege that the named plaintiffs relied on the Chase defendants' false statements. Defs.' Mot. at 37. The Complaint alleges that defendants failed to inform "each" plaintiff of additional coverages. Compl. ¶ 24.a. Although the facts set forth in the common facts section of the Complaint do not specifically link the allegations to the named plaintiffs, the Court concludes that the allegations meet the requirements of Rule 9(b) because precise detail is not required in a case such as this involving numerous plaintiffs that is based on allegations of active suppression of documents and other information. "[W]here the complaint presents the claims of a class and individual identification of the circumstances of the fraud as to each class member would require voluminous pleadings, less specificity is required." *Hanrahan v. Britt*, No. 94-4615, 1995 U.S. Dist. LEXIS 9745, [WL *16] (E.D. Pa. July 11, 1995) (quoting *Kronfeld v. First Jersey Natl Bank*, 638 F. Supp. 1454, 1464 (D.N.J. 1986)); Cf. *Rolo*, 155 F.3d at 659.

### 5. Negligence (Counts III, IV and X)

Plaintiffs allege three separate claims for negligence in Counts III, IV, and X. In connection with those counts, plaintiffs allege that Chase and CMMC owed plaintiffs "the duty of utmost good faith, honesty, and equity in all insurance matters and to abstain from deception." Compl. ¶ 53. According to plaintiffs, Chase and CMMC breached this duty in three ways.

First, the Chase defendants breached this duty and were negligent by failing to disclose to plaintiffs that "effective July 1, 1995 each insured had a right to request contents coverage and increased windstorm and casualty coverage for their dwellings at the same premium rate of $1.95 per hundred dollars of coverage." According to plaintiffs, this failure to disclose "deprived [plaintiffs] of the opportunity to protect their previously uninsured equity interest in the mortgaged properties" and to obtain "contents coverage for their personal belongings." *Id.* ¶¶ 54-56.

Second, in Count IV, plaintiffs allege that defendants breached their duty to plaintiffs and were negligent by "failing to reduce the amount of insurance coverage" to reflect the lower value of plaintiffs' properties after they were damaged by Hurricane Marilyn. *Id.* ¶ 60. As a proximate result of that alleged negligence, "defendants were unjustly enriched and

received premium payments to which they were otherwise not entitled." *Id.* ¶ 60.

Finally, in Count X, plaintiffs allege that the Chase defendants had an obligation to procure adequate insurance coverage for plaintiffs' properties, and to fully inform them of the coverages provided by the Lloyd's policy. *Id.* ¶ 91. According to the Complaint, these defendants breached that duty and were negligent in failing to inform plaintiffs "of the coverages and failed and/or refused to provide adequate coverages." *Id.* ¶ 92. As a proximate result of the alleged negligence, when Hurricane Marilyn struck the Virgin Islands and damaged plaintiffs' properties, plaintiffs claim they "were not paid to the full extent of their insured losses." *Id.* ¶ 94.

"The elements of a negligence suit are well established: 'duty, breach of duty, causation and damages.'" *Gass v. V.I. Tel. Corp.*, 149 F. Supp. 2d 205, 209 (D.V.I. 2001) (quoting *Logan v. Abramson Enters., Inc.*, 30 V.I. 72, 73 (1994), RESTATEMENT (SECOND) OF TORTS § 281 (1965)). A company that undertakes to procure insurance for another and "through fault or neglect fails to do so" can be held liable in negligence. *Towers Condo. Assoc. v. C.E. Brathwaite and Assoc., Inc.*, 40 V.I. 33, 42 (1999).

Under the allegations of the Complaint, defendants owed plaintiffs a duty to procure or provide the agreed upon insurance as brokers or insurers. *See supra* § IV.C.1. The Chase defendants allegedly breached this duty by failing to exercise reasonable care in the provision or procurement of insurance and failing to provide plaintiffs with the information they needed to determine their insurance coverage. For example, the Chase defendants allegedly failed to provide plaintiffs with a copy of the insurance policy or policies under which their property was covered. Compl. ¶ 24. Under Virgin Islands law, an insured must be provided with a copy of his policy. 22 V.I.C. § 825. Moreover, defendants allegedly breached their duty to plaintiffs by failing to give plaintiffs an opportunity to fully insure their property and failing to lower premiums after plaintiffs' property was damaged. As a result, plaintiffs claim they suffered damages in the form of excessive premium payments before and after the hurricane and diminished recoveries after the storm.

Plaintiffs adequately allege negligence claims in Counts III, IV, and X. Thus, the motion to dismiss these counts is denied.

## 6. Fiduciary Duty (Count VII)

Defendants next argue that the Court should dismiss plaintiffs' claim for breach of fiduciary duty in Count VII of the Complaint because "... the Complaint does not allege any facts to support the naked legal conclusion that Chase owed plaintiffs a fiduciary duty." Defs.' Motion at 18.

As discussed in Section IV.C.1 of this memorandum, the plaintiffs assert that the Chase defendants acted as both insurers and insurance brokers. CAS allegedly assisted with the administration of the Property Insurance Program. Compl. ¶¶ 31, 37. It is not necessary for the Court to decide whether defendants acted as insurers or insurance brokers because either role may impose a fiduciary duty on defendants.

No Virgin Islands court has ruled that an insurance broker owes his clients a fiduciary duty. However, one Virgin Islands decision relied on a Seventh Circuit decision, *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260 (1986), in analyzing whether an insurance broker was the agent of the insured and had a fiduciary duty to the insured. *Towers Condo. Ass'n v. C.E. Brathwaite and Assocs., Inc.*, 40 V.I. 33, 42-43 (1999). In *Lazzara*, the Seventh Circuit held that an insurance broker, as the agent of the insured, owes the insured a fiduciary duty. *Lazzara*, 802 F.2d at 265-66; *see also Southtrust Bank and Right Equip. Co. v. Exp. Ins. Servs., Inc.*, 190 F. Supp. 2d 1304, 1308 (M.D. Fla. 2002). Based on the favorable citation of this precedent, this Court predicts that Virgin Islands courts would also hold an insurance broker liable for breach of fiduciary duty.

Although Virgin Islands courts have not explicitly recognized a fiduciary duty in the insurer-insured relationship, they have emphasized the "uniqueness inherent within the [insurer-insured] relationship." *In re Tutu Water Wells Contamination Litig.*, 78 F. Supp. 2d 436, 442 (D.V.I. 1999). "Virgin Islands caselaw, as well as the laws of other states within this circuit, imposes a duty upon the insurer to act in good faith towards the insured." *Id.* (*citing Justin v. Guardian Ins. Co.*, 670 F. Supp. 614, 616 (D.V.I. 1987)). In recognizing the tort of bad faith, one Virgin Islands court stated that the duty of good faith that insurers owe their insured "does not arise out of the contract, but it is an obligation imposed by law." *Justin*, 670 F. Supp. at 616. In addition, as discussed in Section IV.C.1 of this memorandum, the Virgin Islands legislature has recognized the importance of the insurance industry to the public interest

527

and has placed a duty on insurers to preserve "inviolate the integrity of insurance." 22 V.I. CODE ANN. § 2.

██ Given this emphasis on protecting the integrity of the insurance industry, it is likely that Virgin Islands courts would follow guidance of other jurisdictions and recognize that, under certain circumstances, a fiduciary duty can arise in this context. Other courts, applying the common law, have concluded "that insurers have duties to insureds beyond those obligations explicitly stated in their insurance contracts" and that a fiduciary duty can arise from this relationship. *Grove v. Principal Mut. Life Ins. Co.*, 14 F. Supp. 2d 1101, ·1111 (S.D. Iowa 1998); *see also Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 546-47 (S.D.N.Y. 1997) (holding that the question of whether a fiduciary relationship arises in the insurance context is a question for the jury).

The *Grove* case is illustrative of this line of authority. In *Grove*, the court stated that the indicia of a fiduciary relationship between an insured and insurer include "the exercising of influence over one person by another; the inequality of the parties; and the dependence of one person on another." *Grove*, 14 F. Supp. 2d at 1112. *Grove* claimed, *inter alia*, that the defendant had "sole knowledge of, or access to material facts" and held its agents out as "highly skilled insurance experts." *Id*. The *Grove* court denied a motion to dismiss on the ground that plaintiffs alleged sufficient facts to establish the existence of a fiduciary duty.

██ This Court agrees with the rationale of the *Grove* case and concludes that, based on the allegations of the Complaint, it would inappropriate to dismiss Count VII—the breach of fiduciary duty claim. This determination is based on allegations that "[p]laintiffs relied upon [the Chase defendants and CAS's] representations, superior skill, and knowledge, with regard to the nature, scope, and extent of their insurance, the amounts of coverage, and the cost thereof, and as a result of such reliance, suffered substantial damages and losses." Compl. ¶ 77. These allegations include many of the indicia of a fiduciary relationship cited by *Grove* and sufficiently state a claim for breach of fiduciary duty.

### 7. Bad Faith (Count IX)

Defendants next argue that the Court should dismiss plaintiffs' claim of bad faith in Count IX of the Complaint because "[t]he documents referenced in the complaint demonstrate that there is only one agreement between the parties—the mortgage contract. Because the mortgage is not

528

an insurance contract, plaintiffs' claim for bad faith fail[s]." Defs.' Mot. at 26. Defendants also argue that the bad faith claim should be dismissed because "... plaintiffs do not allege, nor can they allege, that they made claims under the so-called 'additional coverages,' and that claim was denied, both of which are essential elements of a claim for bad faith. Defs.' Reply Mem. at 8 n.6. The Court agrees that plaintiffs' failure to demonstrate that they made claims for additional coverage that were denied requires dismissal of Count IX.

██ In order to plead a cause of action for bad faith under Virgin Islands law, a plaintiff must allege "1) the existence of an insurance contract between the parties and a breach by the insurer; 2) intentional refusal to pay the claim; 3) the nonexistence of any reasonably legitimate or arguable reason for the refusal (debatable reason) either in law or fact; 4) the insurer's knowledge of the absence of such a debatable reason or 5) when the plaintiff argues that the intentional failure results from the failure of the insurer to determine the existence of an arguable basis, the plaintiff must prove the insurer's intentional failure to determine the existence of such a debatable reason." *Justin v. Guardian Ins. Co., Inc.*, 670 F. Supp. 614, 617 (D.V.I. 1987). The tort of bad faith "imposes tort liability for an insurer's refusal to pay a *direct* claim." *Id.* at 616. The *Justin* court determined that these requirements were necessary to put the parties to an insurance contract on notice of their obligations. *Id.* at 617. "[T]he test laid down in *Justin* requires not only that the plaintiff establish that an insurer lacked even an arguable or debatable reason to deny the claim, but also that the insurer had knowledge or exhibited reckless disregard as to whether it was fairly debatable to deny the claim." *Worthington v. Euwema Ins. Agency*, CIV. 1996-100, 2000 [WL at *2] (D.V.I. May 2, 2000).

Plaintiffs allege that the Chase defendants committed the tort of bad faith through their "failure to inform plaintiffs of the full nature and extent of their insurance coverage and failing to pay for all of the covered damages and losses occurring as a result of Hurricane Marilyn." Compl. ¶ 85. Plaintiffs further allege that the following acts and omissions by the Chase defendants constituted bad faith: (1) "failure to provide plaintiffs with a copy of the insurance policy as required by law," and (2) "failure to pay plaintiffs and the Class members for the additional coverage losses for additional living expenses, landscaping, temporary repairs, lost rentals, and debris removal." Compl. ¶¶ 86-88.

According to plaintiffs these acts and omissions were "motivated by the fact that defendants failed to purchase sufficient insurance or reinsurance coverage and, as such, were underinsured at the time Hurricane Marilyn struck the Virgin Islands." *Id.* 88.

 The Court concludes that plaintiffs have not stated a claim for bad faith. Plaintiffs have not alleged in the Complaint an intentional refusal to pay claims for additional insurance because they have not alleged that they made such claims. In fact, plaintiffs admit in their Response to the Motion for Summary Judgment that the Chase defendants paid plaintiffs' claims for real property damage "up to the amount of the plaintiffs' mortgage balances." Pls' Resp. at 4. Indeed, they could not have made any other claims because they assert that they were not aware of any additional insurance coverage.

Accordingly, the Court grants the Motion to Dismiss Count IX—the bad faith claim. The Court will, however, grant plaintiffs leave to file an amended complaint setting forth a claim for bad faith if warranted by the circumstances and deemed necessary by plaintiffs.

## D. RICO/CICO (Counts XI and XII)

### 1. RICO

Defendants argue that the Court should dismiss plaintiffs' RICO claims because plaintiffs have failed to (1) allege an "enterprise," (2) plead a RICO "person" separate and distinct from the alleged RICO enterprise, (3) plead the predicate acts of mail and wire fraud with the particularity required by Rule 9(b), and (4) allege that they were injured by the income invested in the purported RICO enterprise as required by 18 U.S.C. § 1962(a).

Plaintiffs have asserted RICO claims under 18 U.S.C. § 1962(a) and (c) ("RICO § 1962(a)" and "RICO § 1962(c)"). In order to plead a violation of RICO § 1962(a), a plaintiff must allege that (1) defendant has received money from a pattern of racketeering activity, (2) defendant invested that money in an enterprise, and (3) that the enterprise affected interstate commerce. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993). Plaintiffs must also allege that their injury resulted from defendants' use or investment of racketeering income. *Brittingham v. Mobil Corp.*, 943 F.2d 297, 305 (3d Cir. 1991) (citing 18 U.S.C. § 1964(c)). In order to plead a violation of 18 U.S.C. § 1962(c), a

plaintiff must allege (1) the existence of an enterprise affecting interstate commerce, (2) that the defendant was employed by or associated with the enterprise, (3) that the defendant participated, either directly or indirectly, in the conduct of the affairs of the enterprise, and (4) that defendant participated through a pattern of racketeering activity that must include the allegation of at least two predicate acts. *A-Valey Eng'rs, Inc. v. Board of Chosen Freeholders of County of Camden*, 106 F. Supp. 2d 711, 715 (D.N.J. 2000).

### (a) § 1962(a): Injury Caused by the Investment of Proceeds from Racketeering Activity

■ Defendants argue that the plaintiffs' RICO § 1962(a) claim should be dismissed because plaintiffs do not allege that "they have been directly harmed as a result of Chase defendants' alleged investment of racketeering income." Defs.' Motion, at 38. The Court agrees and dismisses the RICO § 1962(a) claim on the ground that plaintiffs' Complaint fails to distinguish the harm that resulted from the Chase defendants' reinvestment of proceeds from the harm that was caused by the Chase defendants' alleged fraudulent activities. Plaintiffs are, however, granted leave to file an amended complaint alleging a RICO § 1962(a) claim if warranted by the circumstances.

The Third Circuit has held that a plaintiff must allege more than the reinvestment of proceeds from illegal activity when describing an investment injury under § 1962(a) in *Brittingham v. Mobil Corp.*, 943 F.2d 297 (1991). In *Brittingham*, the court dismissed the plaintiffs' RICO § 1962(a) claim because plaintiffs only alleged that their injury stemmed from the defendants' ability to continue their fraudulent scheme by reinvesting the proceeds of prior fraud. *Id.* at 304. "Over the long term, corporations generally reinvest their profits, regardless of the source. Consequently, almost every racketeering act by a corporation will have some connection to the proceeds of a previous act. Section 1962(c) is the proper avenue to redress injuries caused by the racketeering acts themselves." *Id.* at 305.

Plaintiffs allege in Count XI that "[t]he Chase defendants derived income directly and indirectly from aforesaid acts of mail and wire fraud, and used and invested said income, or a portion thereof, in and for the operation of the Property Insurance Program." Compl. ¶ 99. This claim is similar to the allegation found insufficient in *Brittingham*. Although not

mentioned in the Complaint, plaintiffs argue in their response to the Motion that the Chase defendants used fraudulently obtained proceeds to create CAS and widen the RICO enterprise. Pls.' Resp. at 41. This allegation, even if included in the Complaint, would be insufficient to avoid dismissal of this claim because, although it satisfies the RICO requirement that defendants used money derived from a pattern of racketeering to invest in an enterprise, it does not tie the investment to plaintiffs' injuries. *See Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1168 (3d Cir. 1989). According to the Complaint, plaintiffs' injuries resulted from the fraud alleged by plaintiffs in their RICO § 1962(c) claim, not the investment of the proceeds from this activity.

### (b) § 1962(c): "Enterprise" and "Person"

Defendants argue that plaintiffs fail to allege a person distinct from the alleged "enterprise" in asserting their RICO § 1962(c) claims. Defs' Mot. at 32. The Court rejects this argument. To the contrary, the Court concludes that plaintiffs sufficiently allege an association in fact separate from the individual defendants.

Under the RICO statute, an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A plaintiff may not name a single corporation as both defendant and "enterprise" under 18 U.S.C. § 1962(c). *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 268 (3d Cir. 1995). To state a viable § 1962(c) claim, a plaintiff must allege conduct by defendant "persons" acting through a distinct "enterprise." *Id.* The element of an "enterprise" may be satisfied by alleging an "association-in-fact" enterprise comprised of various defendants. *Emcore Corp. v. Pricewaterhouse Coopers, LLP*, 102 F. Supp. 2d 237, 260 (noting that the Third Circuit has "permitted liability of a corporate defendant where the corporation was named as part of an association in fact enterprise").

Plaintiffs sufficiently plead that defendants are distinct persons involved in an association-in-fact. In denying a motion to dismiss under somewhat similar circumstances, this Court held that the distinctiveness requirement did "not preclude the possibility of an entity playing the role of both RICO person and enterprise." *PTI Servs., Inc. v. Quotron Sys., Inc.*, Civ. No. 94-2068, 1995 U.S. Dist. LEXIS 5477, at *39 (E.D. Pa.

April 19, 1995). Specifically, the *PTI* case held that a defendant could be a member of an association-in-fact enterprise and participate in the activity of the enterprise as a RICO person. In *PTI*, allegations that the defendant corporation participated in an enterprise with three other corporations and its customers were found sufficient to meet the pleading requirements under RICO § 1962(c).

 In this case, plaintiffs allege that the "Chase defendants' Property Insurance Program is an enterprise within the meaning of 18 U.S.C. Section 1962." Compl. ¶ 100. According to the Complaint, the Property Insurance Program was an enterprise operated by Chase Manhattan Bank, Chase Manhattan Mortgage Corporation, The Donnelly Corporation, Patrick R. Donnelly, and Chase Agency Services. *Id.* ¶¶ 3, 28, 29, 31. Because all of these entities are distinct from the alleged association-in-fact enterprise, the Court concludes that the Complaint meets the distinctiveness requirement for pleading a RICO enterprise and person.

### (c) § 1962(c): "Predicate Acts"

Defendants also argue that plaintiffs' allegations of fraud with respect to the predicate acts required by RICO § 1962(c) fail to meet the particularity requirements of Rule 9(b). Defs.' Motion at 33-37. The Court rejects this argument.

In order to state a violation of RICO § 1962(c), plaintiffs must allege that a defendant committed at least two predicate criminal acts. *A-Valey Eng'rs, Inc.*, 106 F. Supp. 2d at 715. Plaintiffs allege that defendants' racketeering activity consisted of violations of federal mail fraud and wire fraud statutes. Compl. ¶ 97; *see also* 18 U.S.C. § 1341, 18 U.S.C. § 1343 (mail and wire fraud statutes). An allegation of mail fraud has two components: "1) a scheme to defraud, and 2) use of the mails in furtherance of the scheme." *S&W Contr. Servs., Inc. v. Philadelphia Hous. Auth.*, No. 96-6513, 1998 U.S. Dist. LEXIS 3966, at * 12 (E.D. Pa. Mar. 25, 1998). Thus, mail or wire fraud claims must satisfy the elements of common law fraud and state that defendants used either the mail or telephone to conduct the fraudulent scheme. In addition, "[i]n an action predicated on fraud under RICO, a plaintiff must meet the pleading standards of Federal Rule of Civil Procedure 9(b)." *Id.* at *9.

 As discussed in Section IV.C.4 of this Memorandum, plaintiffs' fraud allegations meet the requirements of Rule 9(b). In addition,

plaintiffs allege that defendants used mail, telephone, and fax to carry out the fraudulent activities. Compl. ¶¶ 32.e, 32.g, 32.h, 33.b, 36, 37. Plaintiffs need not allege that these mailings contained affirmative misrepresentations. Mail fraud may be established by so-called "innocent mailings" that do not themselves contain affirmative misrepresentations. *Tabas v. Tabas,* 47 F.3d 1280, 1295 n.18 (3d Cir. 1995). Thus, the Court concludes that plaintiffs sufficiently allege the predicate acts of wire and mail fraud as required by RICO § 1962(c).

## 2. CICO (Count XII)

◼ Defendants argue that plaintiffs' claims pursuant to the Criminally Influenced and Corrupt Organizations Act, 14 V.I.C. § 600, *et seq.* ("CICO") fail for the same reasons given for dismissal of their RICO claims. Defs.' Motion at 31. In analyzing this argument, the Court notes that plaintiffs do not specify in the Complaint the provisions of CICO defendants allegedly violated. However, the language of the Complaint is sufficient to encompass claims § 605(a) and § 605(c).

CICO § 605(a) provides that it is "unlawful for any person employed by, or associated with, any enterprise, as that term is defined herein, to conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of criminal activity." 14 V.I.C. § 605(a). § 605(c) makes it "unlawful for any person who has received proceeds derived, directly or indirectly, from a pattern of criminal activity in which he participated ... to use or invest, directly or indirectly, any part of the proceeds thereof ... in the establishment or operation of any enterprise." 14 V.I.C. § 605(c).

The CICO § 605(c) claim must be dismissed because plaintiffs fail to allege that their injury is the result of defendants' investment of racketeering income. "CICO is cast in the mold of the federal RICO statute," and Virgin Islands courts apply RICO analysis to CICO claims. *See Pemberton Sales & Servs., Inc. v. Banco Popular de P.R.,* 877 F. Supp. 961, 970 (D.V.I. 1994). The language of CICO § 605(c) is analogous to the language of RICO § 1962(a); both prohibit the investment of the proceeds of criminal activity. The civil remedy provisions of both acts are also similar. Both acts require the plaintiff to be "injured" by conduct constituting a violation of the respective statute's criminal provisions in order for damages to be awarded. 14 V.I. § 607(c); 18 U.S.C. § 1964(c). Therefore, the Third Circuit's *Brittingham*

analysis for determining whether a plaintiff has adequately alleged a RICO § 1962(a) claim is applicable to plaintiffs' CICO § 605(c) claim, and this claim must be dismissed. *See supra* § IV.D.1.a.

Plaintiffs allegations of a violation of CICO § 605(a) are sufficient to survive a motion to dismiss. CICO § 605 (a) incorporates the same language as RICO § 1962(c). In § IV.D.1.b and § IV.D.1.c of this Memorandum, the Court concluded that plaintiffs stated a RICO § 1962(c) claim. For the reasons set forth in those parts of this Memorandum, plaintiffs' CICO § 605(a) claim will not be dismissed.

## E. CMMC AND CAS

CMMC is named as a defendant in all of the counts of the Complaint. CAS is named as a defendant only in Counts IV, V, VII, XI and XII.

Defendants argue that CMMC and CAS should be dismissed from the action because plaintiffs have failed "to plead any facts that would support the alleged claims against CMMC and CAS." Defs' Mot. at 39. Specifically, defendants argue that the contract claims against CMMC and CAS should be dismissed because "plaintiffs cannot establish the existence of a contract between CMMC or CAS, on the one hand, and each plaintiff, on the other hand." *Id.* at 40. Continuing, defendants contend that the remaining claims against CMMC and CAS should be dismissed because "plaintiffs fail to allege any facts that establish any relationship between those defendants and plaintiffs that would give rise to the duties alleged in the Complaint." *Id.*

Plaintiffs argue they named CMMC and CAS as defendants because they assumed duties to plaintiffs relating to the provision of insurance coverage and both are alleged to have conspired and actively participated in the USVI Property Insurance Program. In the Complaint, plaintiffs refer to Chase Manhattan Bank and CMMC as the "Chase defendants" collectively. Pls.' Compl. ¶ 3. Plaintiffs allege that Chase and CMMC both supervised the Property Insurance Program, deceived plaintiffs concerning their existing and available coverages, and committed predicate acts that subject them to liability under RICO and CICO. *Id.* ¶¶ 16, 24, 28-38.

CAS was created in 1996 to administer the Property Insurance Program and to take over the other defendants' insurance book of business. Pls.' Resp. at 47. It is alleged that CAS actively participated in the wrongful conduct and predicate acts relating to the fraudulent

overcharges for insurance on homes that were damaged, destroyed, or unihabitable in 1996, 1997 and 1998. *Id.* ¶ 26. According to the Complaint, CAS was also an active participant in the RICO and CICO violations. Compl. ¶¶ 31, 36-38.

The Complaint does not consistently specify which actions were carried out by CMMC and CAS. *See supra*, at 3 n. 1. Nevertheless, plaintiffs "have sufficiently outlined the scheme and identified the participants and their corporate roles." *Leavey v. Blinder, Robinson & Co., Inc.*, No. 85-7018, 1986 U.S. Dist. LEXIS 20226, *22-23 (E.D. Pa. Sep. 18, 1986) This level of detail is sufficient to place the defendants on notice of the charges against them, especially when information concerning the defendants' specific roles "is largely in the hands of the alleged corporation." *Id.* The Court concludes that plaintiffs have satisfied the pleading requirement of the Federal Rules of Civil Procedure and the claims against CMMC and CAS will not be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part. Defendants' Motion to Dismiss is granted with respect to plaintiffs' claims of negligent misrepresentation, bad faith, that part of Count XI in which plaintiffs allege a violation of RICO § 1962(a), and that part of Count XII in which plaintiffs allege a violation of CICO § 605(c). Such claims are dismissed without prejudice to plaintiffs' right to file an amended complaint. The Court denies the Motion to Dismiss with respect to plaintiffs' claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, fraud, breach of fiduciary duty, and violations of RICO § 1962(c) and CICO § 605(a). This denial is without prejudice to defendants' right to address such issues after completion of relevant discovery by motion for summary judgment and/or at trial.

An appropriate Order follows.