**TOWERS CONDOMINIUM ASSOCIATION, Plaintiff**

**v.**

**C.E. BRATHWAITE AND ASSOCIATES, INC, and ISLAND NATIONAL INSURANCE COMPANY INC., Defendants.**

Civ. No. 46/1996

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

February 4, 1999

33

Pedro K. Williams, Esq., St. Thomas, U.S.V.I., *for Plaintiff*

Francis J. D'Aramo, Esq., Christiansted, St. Croix, U.S.V.I., *for Defendants*

Britain H. Bryant, Esq., Christiansted, St. Croix, U.S.V.I., *for defendant*

HOLLAR, *Judge*

## MEMORANDUM OPINION

This matter is before the Court on motions by the parties for summary judgment. Plaintiff, Towers Condominium Association, (hereinafter "Towers"), asserts that both defendants C.E. Brathwaite and Associates, Inc., (hereinafter "CEB') and Island National Insurance Company, (hereinafter "INIC"), as agent and carrier respectively, were negligent in procuring insurance coverage for Towers. It is also alleged that the defendants impermissibly rejected Towers' application after it suffered loss as a result of Hurricane Marilyn. CEB counters that it is entitled to summary judgment because it was a broker for Towers; Towers was uninsurable as a result of misrepresentations made on its insurance application; and at or about the time Towers filed its application, INIC discontinued writing insurance coverage because hurricane warnings were posted for an imminent storm. INIC also seeks summary judgment relief contending that CEB was not its agent and it never issued any insurance binder for Towers. For reasons that follow, this Court holds that there exists genuine issues of material fact in dispute which preclude an award of summary judgment for any of the parties.

## 1. Facts and Procedural History

On or about August 8, 1995, Towers requested that CEB obtain quotations for insurance coverage for Towers because its existing insurance was to expire on September 8, 1995. In response, CEB transmitted to Towers a quote it received from INIC, an insurance carrier. Towers alleges that while it received INIC's quotation, it categorically denies receiving a number of conditions and a statement with the quote asserting *inter alia*, that no binding

34

authority was conveyed to CEB and the quote was valid for only a period of ten (10) days. While the INIC quote was received by CEB on August 16, 1995, it was only sent by CEB to Towers on August 24, 1995. According to Towers, the quote received omitted the conditions stipulated by INIC. As a result, Towers contends it was not made aware of the fact that CEB did not have binding authority.

On September 5, 1995, Towers informed CEB that it would accept the INIC offer,[1] however, Towers requested a copy of the INIC reinsurance treaty. This treaty was sent to Towers on September 8, 1995, the same day the existing Towers policy lapsed. On the evening of September 8, 1995, the Towers' Board met and found the treaty acceptable. On Monday, September 11, 1995, Janice Popo, resident manager of Towers, called Ms. Cheteram, Office Manager of CEB and reconfirmed Towers' decision to take the INIC insurance.[2] Ms. Cheteram then told Ms. Popo to come into the office to sign the necessary papers.

On Tuesday, September 12, 1995, Ms. Popo went to CEB's office to sign an application. According to Ms. Popo, Ms. Cheteram filled out the application by transferring the information that had previously been supplied by Towers on August 8, 1995, onto the application. Ms. Popo alleges that at no time on September 12, 1995, did Ms. Cheteram ask if Towers had suffered any loss from Hurricane Luis which hit the Territory the previous week on September 5 and 6, 1995, or if the information had changed since it was initially provided in August, 1995. CEB, however, contends that Towers failed to disclose that it had sustained damages from Hurricane Luis and that it had in fact filed a claim for loss in connection with that occurrence.

After Towers signed the application, CEB agreed to finance the premium on the following terms of payment: $5,000.00 down, and $11,861.20 on September 26, 1995 and the balance payable over nine (9) months at 11.5% per annum. Towers asserts that it made the required downpayment on September 12, 1995. CEB denies receipt of the downpayment until September 13, 1995. Towers'

---

[1] Deposition of Janice Popo, pg. 27.

[2] Deposition of Janice Popo, pg. 27-29.

insurance application was not faxed to INIC until 3:41 p.m. on Wednesday, September 13, 1995. Towers alleges that CEB assured them as late as September 13, 1995, that it was covered and that the binder was being typed.

On September 14, 1995, at approximately 10:07 a.m., CEB received a notice from INIC that effective 10:00 a.m. that same day, INIC was suspending the writing of all policies that included windstorm coverage. This information was never communicated to Towers by CEB and CEB did not return Towers' deposit after receiving the communication from INIC. Hurricane Marilyn struck the Territory that same day, sustaining serious damages to Towers' property.

On September 26, 1995, Towers and CEB met again. Towers tendered the next installment of $11,861.20 to CEB. This check, however, was subsequently dishonored by the bank. During this time, Towers was still under the assumption that it was covered. On September 30 and October 1, 1995, Towers submitted its claim for loss through CEB. In response to Towers' claim, INIC informed CEB by letter dated October 2, 1995, that Towers was not covered. INIC denied coverage for the following reasons: (1) the quotation was accepted after the ten (10) days expiration period; (2) the application was submitted by Towers after the hurricane warning was broadcasted; and (3) INIC faxed a notice to CEB that it was no longer accepting applications.[3]

On or about October 10, 1995, CEB informed Towers of the contents of INIC's October 2, 1995 letter. Towers then brought action against INIC and CEB jointly and severally alleging breach of contract, negligence, bad faith dealing, breach of fiduciary duty and declaratory judgment. On February 16, 1996, defendant CEB filed an answer to Towers' complaint and a cross-claim against INIC asserting that in the event it is found liable to Towers, it is entitled to contribution and/or indemnity from co-defendant INIC.

On February 26, 1996, co-defendant INIC responded to Towers' complaint and filed its own cross-claim against CEB contending that to the extent INIC is liable, it is entitled to contribution and/or

---

[3]Kay Willocks deposition, pg. 45-47.

indemnification from CEB. On February 28, 1996, co-defendant CEB filed its answer to INIC's cross-claim. On March 4, 1996, co-defendant INIC responded to CEB's cross-claim.

On December 9, 1996, CEB filed a motion for summary judgment asserting that it was a broker for Towers; it utilized due diligence in its attempt to procure windstorm coverage for Towers; the insurance that Towers requested was denied because such coverage was no longer available due to an imminent storm; and that Towers was uninsurable because it failed to pay its required premium, breaching its agreement with CEB.

Towers responded to CEB's motion for summary judgment on January 15, 1997. Towers argues that CEB was an agent for INIC; CEB failed to exercise reasonable care, diligence and good faith to procure insurance for Towers; and that CEB thereby breached its fiduciary duty. Towers further asserts that it detrimentally relied on CEB's representation that insurance had been procured and that CEB should be held liable. On February 3, 1997, CEB filed its reply to Towers' opposition to motion for summary judgment.

On February 5, 1997, co-defendant INIC filed with the Court its motion for summary judgment. INIC contends that Towers' action against INIC is predicated solely on the notion that INIC had bound insurance for Towers. INIC asserts that the notion was erroneous and that it is entitled to summary judgment as a matter of law. Towers responded to INIC's motion on March 3, 1997 and on March 4, 1997, Towers filed a motion for summary judgment with the Court. INIC filed a response to this motion on March 4, 1997. INIC also filed a supplemental memorandum on March 16, 1997, in which it alleged that Towers did not disclose its Hurricane Luis loss when it submitted its application to INIC. As a result its failure to disclose said loss on the application, INIC contends that Towers made a material misrepresentation.

On March 5, 1997, the Court heard oral arguments on the pending motions. At the conclusion of the oral arguments for summary judgment, the Court requested the parties to submit briefs on the issue of the agency/broker status of CEB and the issue of material misrepresentation. On March 13, 1997, Towers filed a supplement to its motion for summary judgment. On March 16, 1997, INIC filed a response to Towers' supplementary motion for summary judgment.

On March 17, 1997, CEB filed a supplemental memorandum in support of its motion for summary judgment. Next, on March 21, 1997, CEB filed an opposition to Towers' motion for summary judgment. On September 9, 1997, pursuant to an Order of Rehabilitation entered by Judge Ross, the proceedings with regards to defendant INIC, were stayed. Towers requested the Court to vacate the stay and to rule on the pending motions in order to ascertain whether the suit would be disposed of and whether INIC remained as a party.

## II. STANDARD FOR SUMMARY JUDGMENT

When a party seeks adjudication in the form of summary judgment, the Court is governed by *Fed. R. Civ. P. 56*, as applied to the Territorial Court by *Terr. Ct. R. 7*. Summary judgment is required when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. Civ. P. 56(c)*. The party seeking summary judgment bears the initial responsibility of informing the Court of the basis for its motion, and identifying that which it believes demonstrate the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

■ For a dispute to be "genuine", the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 284 (1986). To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact on "an element essential to the party's case, and on which that party will bear the proof at trial." *Celotex Corp. v. Catrett, supra*. Thus, "summary judgment, an extreme remedy, cannot be entered unless the movant has established its rights to a judgment with such clarity as to leave no room for controversy, and the other party is not entitled to recover under any discernable circumstance." *Bottle v. Industrious*, 26 V.I. 83, 85 (Terr. Ct. 1991).

## III. DISCUSSION

This Court is asked to resolve essentially four issues in relation to the motions for summary judgment. The issues raised include:

(1) whether there exists a genuine issue of material fact as to whether Towers intended to deceive defendants; (2) whether there exists a genuine issue of material fact as to the status of CEB; (3) whether there exists a genuine issue of material fact as to whether Towers breached its agreement with CEB; and (4) whether there exists a genuine issue of material fact regarding CEB's duty to inform Towers that it was not covered, and if so, whether CEB breached that duty.

### A. There Exists A Genuine Issue Of Material Fact In Dispute As To Whether Towers Intended To Deceive Defendants

Both CEB and INIC argue that they are not liable to Towers because Towers committed a material misrepresentation when it failed to disclose its claim of loss from Hurricane Luis on its application for insurance. Both defendants argue that said misrepresentation was made with the intent to deceive INIC into issuing an insurance policy. Towers avers that Ms. Cheteram transferred the information that was given in August of 1995 onto the application form without asking for any updated information. Ms. Popo stated that she simply signed the application and was not asked to give any information pertaining to Towers' loss claim resulting from Hurricane Luis, that occurred the week before September 5th and 6th, 1995.

Towers does not deny the fact that it sustained damages during Hurricane Luis and that it filed a claim of loss with its prior carrier. Instead, Towers argues that its representative, Ms. Popo, was not aware of such a claim made by Towers. While Ms. Popo might be correct that she did not have actual knowledge of any claim by Towers, it is undisputed that she had constructive knowledge because a party who signs a document cannot claim that she did not have knowledge of its contents. *Cotto v. Hess Oil Virgin Islands Corporation*, 21 V.I. 45 (D.C.V.I. 1985). Since Ms. Popo was signing on behalf of Towers, her signature on the application for insurance amounts to Towers' failure to disclose the information pertaining to its loss from Hurricane Luis on its application for insurance. Notwithstanding such, genuine issues of material fact remain as to whether CEB was negligent in its handling of Towers' application for insurance and whether Towers had an obligation to ascertain

39

whether the information given was current and accurate as of the date the application was signed.

■ Although Towers failed to disclose its loss resulting from Hurricane Luis on its application for insurance, another issue of fact remains as to whether such failure to disclose was made with the intent to deceive. Whether a person has committed a misrepresentation is governed by statute. V.I. Code Ann. tit. 22 § 809(a) states:

> Except as provided in subsection (b) of this section, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the <u>intent to deceive</u>.

Although Towers failed to disclose its loss resulting from Hurricane Luis on its application, it must be determined whether such misrepresentation was material thereby precluding Towers from prevailing on its claim. For a misrepresentation to be material, it must have been made with the intent to deceive. Given the circumstances upon which the application was signed, there is a question of material fact in dispute as to whether any misrepresentation contained in the application was made with the <u>intent to deceive</u>. Hence, CEB's motion for summary judgment must fail.

## B. There Exist Genuine Issues Of Material Fact As To The Status of CEB

INIC asserts that it is entitled to summary judgment because CEB was not its agent and its liability is predicated solely on the notion that it had bound insurance for Towers. Towers contends that CEB was an agent of INIC. In support of its contention, Towers points to an agreement between the parties. This agreement dated May 3, 1995, appears to be signed by Christopher Brathwaite and gives CEB binding authority to effect policies of insurance.[4] CEB asserts that it was not an agent of INIC but an agent or broker of Towers.

---

[4] The agreement reads as follows:

V.I. Code Ann. tit. 22, § 751(b) and (c) define the terms "agent" and "broker" as follows:

(b) "Agent" means any person appointed by an insurer to solicit applications for insurance on its behalf, and if authorized so to do, to effectuate and countersign insurance contracts except as to life or disability insurance, and to collect premiums on insurance so applied for or effectuated.

(c) "Broker" means any person who, on behalf of the insured, for compensation as an independent contractor, for commission, or fee, and *not being an agent of the insurer*, solicits, negotiates, or procures insurance or reinsurance or the renewal or continuance thereof, or in any manner aids therein, for insureds or prospective insureds other than himself. (Emphasis Provided).

V.I. Code Ann. tit. 22, §§ 765 and 766 sets forth the authority of a broker and limitations of the agent-broker combination. Not surprisingly, those provisions provide as follows:

### Broker's Authority

(a) A broker, as such, is not an agent or other representative of an insurer, and does not have power, by his own acts, to bind the insurer upon any risk or with reference to any insurance contract.

(b) An insurer or agent shall have the right to pay to a broker licensed under this title, or under the laws of any other jurisdiction, and such broker shall have the right to receive from the insurer or agent, the customary

---

Pursuant to V.I. Code Ann. Tit. 22, § 753, I hereby agree to serve as agent for Island National Insurance Company of St. Croix in and for the Virgin Islands of the United States, and further agree that I will not rebate any part of the premium or commission or offer any valuable consideration as an inducement to take insurance other than that clearly expressed in the policy.

*Further, if I sign policies,* I will maintain an office within the Virgin Islands and keep therein at all times a complete record of all applications for and policies of insurance placed by or through me, and will not sign any policies in blank to be issued outside my office, (Emphasis Added)

commissions upon insurances placed in the insurer by the broker.

### Agent-broker Combinations

A licensed agent may be licensed as a broker and be a broker as to insurers for which he is not then licensed as agent. A licensed broker may be licensed as and be an agent as to insurers appointing him as agent. The sole relationship between a broker and an insurer as to which he is licensed as an agent shall, as to transactions arising during the existence of such agency appointment, be that of insurer and agent.

Whether INIC can be found liable depends on whether CEB was an agent of INIC acting within the scope of its authority. The acts of one procuring insurance as the agent of the insurer are imputable to it, while those of one acting as the agent of the insured, or as a broker, are not. *Independent Fire, Ins. Co., v. Robert W. Lea, Jr., et al.,* 775 F. Supp. 921 (E.D.L.A. 1991). Because the acts of CEB could be imputed to INIC, if CEB is found to be an agent of INIC, both or either party could be held liable for failure to provide timely and requisite coverage for Towers. On the other hand, if CEB was a broker or agent for Towers, it would be solely liable for any negligent act because generally a broker or agent, who with a view to compensation for his services, undertakes to procure insurance coverage for another and through fault or neglect fails to do so, could be held liable for any damages resulting therefrom. *Long Island Lightning, v. Steel Derrick,* 725 F. 2d 839 (2nd Cir. 1984).

To determine whether an agency relationship existed between an insured and a broker, courts have looked at the following criteria: (1) who called the intermediary into action; (2) who controls the actions of the intermediary; (3) who pays the intermediary; and (4) whose interests does the intermediary represent. *Lazzara v. Howard A. Esser, Inc.,* 802 F.2d 260 (7th Cir. 1986). In the case under consideration, the evidence shows that Towers called CEB into action by requesting that CEB procure insurance coverage for it. Towers did not direct CEB to obtain insurance coverage from a specified insurer, but rather relied on CEB's judgment. Nor was

42

CEB obliged to obtain the coverage from any particular insurer. Further, CEB accepted Towers' downpayment of $5,000.00. Although Towers paid CEB the downpayment on the premium, it is unclear whether Towers was paying a commission or fee for CEB's services. Thus several questions of fact exist regarding factors needed to determine CEB's status as a broker.

The question of whether an insurance broker is the agent of the insured is generally one of fact. *Lazzaro v. Esser, supra.* The evidence shows that CEB could have placed Towers' business with several different insurance companies; that Towers contacted CEB instead of a particular insurance agency and that Towers permitted CEB to choose which company to place its business with, although Towers scrutinized the insurance treaties before ratifying the selection. It, however, remains unclear as to whose interest CEB represented in this procurement of insurance transaction. Since it appears that an agency agreement dated May 3, 1995 existed between CEB and INIC, it is possible that CEB's primary interest was to act on behalf of INIC. Conversely, if CEB represented Towers in the capacity of a broker then Towers' interest might have been paramount. The ultimate decision whether a broker is the agent of the insured, or of the insurer, depends on the facts of each particular case, together with the circumstances and the conduct and communications between the parties. Couch on Insurance, 3d, § 45:9 (1995). Thus, there is a genuine issue of material fact as to the status of CEB.

### C. There Exist Genuine Issues Of Material Fact In Dispute As To Whether Towers Breached Its Agreement With CEB.

CEB further argues that Towers breached its agreement with CEB when it paid for its first instalment after the downpayment for the premium with a check that was subsequently dishonored by the bank. Towers suffered hurricane damages on September 14, 1995, two days after CEB accepted an initial deposit of $5,000.00 from Towers. The next payment was not due until September 26, 1998. At the time the loss occurred, Towers had fulfilled all of its payment obligations.

Although Towers paid the next installment with a dishonored check, the record is devoid of any mention as to whether Towers

was given any opportunity to make the dishonored check good. Nowhere in the records was it shown that Towers had temporary coverage, on condition of the payment of the entire premium. When an insurance company seeks to avoid temporary insurance coverage, it may do so by not accepting the initial premium or by including clear and unequivocal language in a conditional receipt stating its intention to condition liability upon subsequent approval of the application for insurance. *Cain v. Aetna Life Ins. Co.*, 659 P.2d 1334, 1340 (1983).

■ As a result of the foregoing, a question of fact remains as to whether Towers had paid for temporary insurance sufficient to cover it at least through Hurricane Marilyn; and whether Towers refused to pay subsequent installment payments on the insurance premiums thereby creating a breach of the insurance contract and relieving CEB and/or INIC of liability.

**D. There Exists A Genuine Issue Of Material Fact As To Whether CEB Had A Duty To Inform Towers That It Was Not Insured**

■ Separate and apart from Towers' failure to disclose its claim of loss from Hurricane Luis, Towers was never issued a policy by INIC. Pursuant to its agreement with CEB, Towers submitted its down payment of $5,000.00 on September 12, 1995. This downpayment was accepted by CEB. At no time before Hurricane Marilyn hit the Territory, did CEB inform Towers that INIC had rejected its application. Additionally, CEB neglected to return Towers' downpayment of $5,000.00 or inform Towers that the downpayment was not accepted. To further complicate matters, CEB not only accepted the next installment on the premium in the amount of $11,861.20 on September 26, 1995, (although that check was later dishonored), but it also accepted Towers' claim of loss as a result of Hurricane Marilyn on September 30, and October 1, 1995. CEB's conduct and acceptance of checks clearly left Towers with the reasonable impression that it was insured. Hence, there exists an issue of material fact in dispute as to whether CEB breached its duty to timely inform Towers that it was not insured and whether Towers detrimentally and justifiably relied on CEB's assurance of insurance coverage.

44

## IV. CONCLUSION

Although Towers failed to disclose its insurance loss from Hurricane Luis on its application for insurance with CEB, there exist genuine issues of material fact as to whether said omission or misrepresentation was made with an intent to deceive. In addition, there are genuine issues of material fact in dispute as to the status of CEB in relation to its role as an agent for INIC or broker for Towers; whether Towers breached its agreement with CEB by its presentment of an installment check after the hurricane for the premium which was subsequently dishonored by the bank; and whether CEB had a duty to inform Towers that it was not insured, and if so, whether that duty was breached. Accordingly, summary judgment is denied as against each party.