**PIERRE P. JOSEPH, Plaintiff**
**v.**
**HESS OIL VIRGIN ISLANDS CORP., Defendant**

Case No. SX-95-CV-267

Superior Court of the Virgin Islands

Division of St. Croix

April 14, 2009

DONOHUE, *Judge*

## OPINION AND ORDER

(April 14, 2009)

**THIS MATTER** is before the Court on Defendant, Hess Oil Virgin Islands Corp.'s (hereinafter "HOVIC"), Motion for Summary Judgment. Plaintiff, Pierre P. Joseph, has filed an Opposition and the Parties have filed several supplemental pleadings.[1]

## BRIEF FACTS

Plaintiff was employed by United Dominion Constructors, Inc. (hereinafter "UDCI"). UDCI had a contract with HOVIC to construct the Fluid Catalytic Cracking Unit (FCCU) at the HOVIC facility. On or about April 12, 1993, the Plaintiff was allegedly digging holes for UDCI at the HOVIC facility when he injured his back. Comp. ¶¶ 4, 5. On April 21, 1995, Plaintiff filed a Complaint alleging that his injuries were a direct result of negligent supervision by HOVIC and seeking damages. Comp. ¶¶ 6, 7. Plaintiff argues that the digging of the holes required the use of a forklift but HOVIC failed to provide such equipment and thus, Plaintiff suffered injury as he attempted to complete the work using a shovel. Pl.'s Opp. Def.'s Memo. Mot. Summ. J., 2. HOVIC contends that no HOVIC supervisor was present while Plaintiff performed his work; and UDCI, not HOVIC, controlled the tools and equipment used for the job. Def.'s Memo. Mot. Summ. J., 2.

---

[1] The Court notes that the Parties have failed to adhere to the procedural rules that govern this Court. Rule 7.1(a) of the Local Rules of Civil Procedure provides "Only a motion, a response in opposition, and a reply may be served on counsel and filed with the Court; further response or reply may be made only by leave of the Court obtained before filing. . . ." LRCi 7.1(a) (formerly LRCi 7.1(g)). Here, the Parties filed several pleadings, during 2000 and 2001, without leave of the Court. Despite the Parties disregard for the rules, the Court will deem these pleadings filed because of the necessity in resolving this matter without further delay.

## STANDARD

The Court may grant a motion for summary judgment when all materials on file, together with the affidavits, show that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The Court must first inquire as to whether there exists "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "For a dispute to be 'genuine,' evidence must be such that a reasonable jury could return a verdict for the non-moving party." *Towers Condo. Ass'n v. C.E. Brathwaite & Assocs.*, 40 V.I. 33, 38 (Terr. Ct. 1999).

Since "a motion for summary judgment lies only when there are no genuine issues of material fact and is not to be used as a substitute for trial of disputed factual issues . . . the court cannot try issues of fact on a Rule 56 motion, but is only empowered to determine whether there are issues to be tried." *Macedon v. Macedon*, 19 V.I. 434, 437-438 (Terr. Ct. 1983) (internal citations omitted). In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the non-moving party must point to some evidence in the record that creates a genuine issue of material fact." *Berckeley*, 455 F.3d at 201. Essentially, the non-moving party cannot rest on the allegations of the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

## DISCUSSION

HOVIC makes three primary arguments in its Motion for Summary Judgment: (1) UDCI was an independent contractor pursuant to RESTATEMENT (SECOND) OF AGENCY § 220; (2) HOVIC *is* not liable for Joseph's injuries pursuant to RESTATEMENT (SECOND) OF TORTS § 409

7

and § 414; and (3) Even if § 414 presents a viable theory of liability for Joseph, HOVIC did not retain control over the method and manner of Joseph's work sufficient to make it liable under § 414.

## A. UDCI was an Independent Contractor of HOVIC.

HOVIC argues that language of the Parties' Construction Services Agreement (hereinafter the "Parties' Agreement") as well as the factors listed in Section 220(2) of the RESTATEMENT (SECOND) OF AGENCY (hereinafter "§ 220") demonstrate that UDCI was an independent contractor of HOVIC at the time of Joseph's injury. HOVIC points specifically to the Article 3.2 language,[2] which it argues dictates the Parties' relationship. Joseph argues that UDCI is not an independent contractor under § 220 and insists that a genuine issue of material question of fact exists to be determined by a fact finder.

■ "Absent local law to the contrary, the Restatements are the rules of decision in the courts of the Virgin Islands." *Carty v. Hess Oil Virgin Islands Corp.*, 42 V.I. 125, 78 F. Supp. 2d 417, 420 n.8 (citing 1 V.I.C. § 4 (Equity 1995 & Supp.1998)). The § 220 factors list several matters of fact that must be used to determine "whether one acting for another is a servant or an independent contractor:"

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities,

---

[2] Article 3.2 provides in pertinent part:

*Independent Contractor* — CONTRACTOR is an independent contractor hereunder, and as such reserves the right to hire or discharge employees and to designate the hours or work (including overtime hours, subject to advance written notice to HOVIC) and classification or work for each employee. In the event that HOVIC disagrees with CONTRACTOR's method of execution of the Work, HOVIC will so advise CONTRACTOR in writing and both parties will use their best efforts to resolve the dispute. CONTRACTOR shall take all reasonable steps and precautions to see that labor employed by it and its subcontractors on the premises of HOVIC complies with HOVIC's personnel and safety regulations which HOVIC has established for contractors performing work on its premises. . . . Def.'s Memo. Mot. Summ. J., 2., Ex. D at 10.

tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of master and servant; and (j) whether the principal is or is not in business. § 220(2) (1958).

■ "If the inference is clear that there is, or is not, a master and servant relation, [the determination] is made by the court; otherwise the jury determines the question after instruction by the court as to the matters of fact to be considered." § 220 cmt. c.

■■ While the § 220 factors are to be considered in totality and no one factor is independently determinative, Courts have held that "the most important factor is the degree of control exercised by the principal. . ." *McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 853 (3d Cir. 1996) (citations omitted).[3] "In an employer-employee relationship, the [employer] not only controls the result of the work but has the right to direct the way in which it shall be done. In contrast, the characteristic of the [employer-independent contractor] relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result." *Id.* (internal citations and quotation marks omitted). Regarding factor (a) — the extent of control which, by the agreement, the master may exercise over the details

---

[3] *See also Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000) ("Though no single factor is dispositive, the greatest emphasis should be placed on the first factor-that is, on the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks. . . . The first factor is entitled to this added weight because, under the common law of agency, an employer-employee relationship exists if the purported employer controls or has the right to control both the result to be accomplished and the manner and means by which the purported employee brings about that result." (internal citations and quotation marks omitted); *Shelter Mut. Ins. Co. v. Jones*, 343 F.3d 925, 926 (8th Cir. 2003) ("To determine whether an individual was acting as an independent contractor, we look at the totality of the circumstances . . . factor (a), the extent of control, is the 'principal factor in determining the relationship' "); *N.L.R.B. v. Friendly Cab Co., Inc.*, 512 F.3d 1090, 1096 (9th Cir. 2008) ("Although courts must look to the totality of the circumstances, '[t]he essential ingredient of the agency test is the extent of control exercised by the 'employer."); *North American Van Lines, Inc. v. N.L.R.B.*, 869 F.2d 596, 599, 276 U.S. App. D.C. 158 (D.C. Cir. 1989) ("The extent of the actual *supervision* exercised by a putative employer over the 'means and manner' of the workers' performance is the most important element to be considered in determining whether or not one is dealing with independent contractors or employees.") (internal quotation marks omitted).

of the work — HOVIC points to Joseph's admission that "he took instruction only from his UDCI supervisor and foreman." Def's Memo. Mot. Summ. J., 12. On the other hand, Joseph contends that "all contractor work is supervised and controlled by Hess supervisors." Pl.'s Opp. Def's Memo. Mot. Summ. J., 5. The evidence presented, however, indicates that Joseph received his work orders on the day of his injury from the UDCI general foreman and his supervisor and there were no HOVIC supervisors present when the injury occurred. See Joseph Dep. at 66-69. While Joseph contends that HOVIC directed and controlled the manner in which UDCI performed its work, he has not presented evidence of such.[4]

Furthermore, while all the § 220 factors were not directly addressed by the parties, the factors indicate the existence of an employer-independent contractor relationship. The extent of UDCI's contract was to construct the FCCU at the HOVIC refinery, a distinct form of work requiring particular skills. Construction of this type was not a part of HOVIC's regular business as HOVIC was in the business of refining oil and UDCI was contracted to construct the FCCU. The parties also believed they were creating an independent contractor relationship per their agreement. Therefore, in reviewing the Parties' Agreement and the § 220 factors, the Court finds that HOVIC and UDCI had an employer-independent contractor relationship.

**B. An Employer Can Be Held Liable for Injuries to an Independent Contractor's Employees Under RESTATEMENT (SECOND) OF TORTS §§ 409, 414.**

■ HOVIC argues that it is not liable for Joseph's injuries under the RESTATEMENT (SECOND) OF TORTS § 409 nor § 414. Under § 409, an employer of an independent contractor is not liable for the physical harm caused to another through the acts or omissions of the contractor (or the contractor's servants). Section 414 provides that an employer would be liable for physical harm to others if they retained control over any part of the work. Joseph contends that HOVIC's retained control over his work make it liable for his injuries. The Court must first determine whether

---

[4] A full analysis of the issue of control pursuant to RESTATEMENT (SECOND) OF TORTS § 414 is discussed in Section C of this order.

HOVIC can be liable to Joseph as an employee of its independent contractor, and second whether HOVIC retained control over any part of the work performed by UDCI sufficient enough to irreparably damage the employer-independent relationship between HOVIC and UDCI.

 As an initial observation, the Court notes that the Parties rely on several cases which have subsequently been reversed, remanded, or vacated during the pendency of this matter.[5] As a result, clarification on the governing law in this area is necessary. RESTATEMENT (SECOND) OF TORTS § 409 provides "Except as stated in §§ 410-429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." RESTATEMENT (SECOND) OF TORTS § 414 states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Essentially, "Chapter 15 of the Restatement (Second) of Torts covers the liability of an employer of an independent contractor for injuries caused to others by the acts or omissions of the contractor. The first provision, section 409, recites the general rule of non-liability. . . . [S]ection [414] describes [a] situation[] in which an employer may nevertheless be liable for injuries to others caused by the contractor. *Figueroa v. HOVIC*, 198 F. Supp. 2d 632, 637 (D.V.I. 2002) (internal citations omitted).

In *Figueroa v. HOVIC*, 198 F. Supp. 2d 632 (D.V.I. 2002), the Appellate Division of the District Court was faced with determining whether the trial court erred in dismissing the Plaintiff's § 414 claim. The *Figueroa* Trial Court had relied on *Monk v. V.I. Water & Power Authority*,

---

[5] *Figueroa v. HOVIC*, Civil No. 137/1997, *rev'd by Figueroa v. HOVIC*, 198 F. Supp. 2d 632 (D.V.I.2002); *Marcano v HOVIC*, Civil No. 69/1995, *vacated by Marcano v HOVIC*, 237 F. Supp. 2d 592 (D.V.I.2002); *Gass v. Virgin Islands Telephone Corp. et. al.*, 149 F. Supp. 2d 205, *rev'd in part, aff'd in part by Gass v. Virgin Islands Telephone Corp. et. al.*, 45 V.I. 649, 311 F.3d 237 (3rd Cir. 2002); *Carty v. HOVIC*, Civil No. 377-1993, *rev'd by Carty v. HOVIC*, 42 V.I. 125, 78 F. Supp. 2d 417 (D.V.I.1999). The Parties' reliance on these cases render many of their arguments ineffective as these cases no longer carry persuasive or precedential value on this Court.

53 F.3d 1381, 32 V.I. 425 (3d Cir.1995) "for the proposition that an independent contractor's employees may not sue the contractor's employer under **any** provision of Chapter 15 of the Restatement (Second) of Torts." (emphasis added). *Figueroa*, 198 F. Supp. 2d at 636. "In *Monk*, the Court of Appeals for the Third Circuit [had] considered whether the word others, in section 413 . . . encompasses an independent contractor's employees. After extensive analysis, the court concluded that, under Virgin Islands law, employees of an independent contractor are not included within the protection of others under the *peculiar risk* provisions of Chapter 15 of the Restatement." *Figueroa*, 198 F. Supp. 2d at 636-637 (internal quotation marks omitted). Therefore, the *Monk* Court held that employers should not be held liable to an independent contractor's employees under the *peculiar risk* provisions of Chapter 15.[6]

 The *Figueroa* Trial Court relied on this reasoning to dismiss to the Plaintiff's § 414 claim. The Appellate Division of the District Court held that to extend this reasoning to the Plaintiff's § 414 claim was in error stating "it is clear that *Monk* did not extend to section 414 of the Restatement (Second) of Torts because that section is not a peculiar risk provision." *Id.* at 637.[7] Therefore, **an injured employee of an independent contractor may sue the employer of the independent contractor under the provisions of section 414**, if that employer is not

---

[6] *See Monk v. Virgin Islands Water & Power Authority*, 53 F.3d 1381, 1394, 32 V.I. 425 (3d Cir. 1995) ("[w]e should clarify that this holding extends to actions under the direct liability provision of section 413, as well as the vicarious liability provisions of sections 416 and 427)."

[7] The *Figueroa* Appellate Court further explained "in *Carty v. Hess Oil Virgin Islands Corporation*, 42 V.I. 125, 78 F. Supp. 2d 417 (D.V.I. 1999), this court held that section 414 imposes a duty on the employer where the claim involves an employee of an independent contractor. In so ruling, the court confirmed that *Monk* does not apply to section 414, but is limited to the *peculiar risk* provisions of Chapter 15." *Figueroa*, 198 F. Supp. 2d at 639. *See also Gass v. Virgin Islands Telephone Corp.*, 45 V.I. 649, 311 F.3d 237, 243 (3d Cir. 2002) (internal citations omitted) ("It is clear that we intended to limit the holding in *Monk* to sections 413, 416, and 427 given that we expressly limited the holding to the peculiar risk provisions of Chapter 15 of the Restatement, and further clarified that the holding extends to actions under the direct liability provision of section 413, as well as the vicarious liability provisions of sections 416 and 427. We declined to rule that an employee of an independent contractor could never sue the employer of an independent contractor under any section of chapter 15. Instead, we carefully limited the reach of the *Monk* decision to the peculiar risk sections of Chapter 15. Therefore, the District Court's interpretation of *Monk as* prohibiting hirer liability under sections 410 and 414 can not be upheld on the basis of the plain language of the stated holding.") (internal quotation marks omitted).

12

named in the worker's compensation certificate, and that person's negligent conduct caused the employee's injuries. . . . [Thus, it must be concluded] that an injured employee may sue anyone other than his employer whose conduct caused his injuries." *Id.* at 643. (emphasis added).

■ Specifically, "under section 414, the employer must be alleged to have exercised his retained control negligently." *Gass v. Virgin Islands Telephone Corp.*, 311 F.3d 237, 241, n.3, 45 V.I. 649 (3d Cir. 2002). Again in *Marcano v. HOVIC*, 237 F. Supp. 2d 592 (D.V.I.2002), the Appellate Division of the District Court stated "[w]e will not depart from our holding in *Figueroa* . . . That is, that *Monk* does not apply to direct negligence cases where the employer of the independent contractor retains control." "[T]here is simply no basis in law, to hold that one who hires an independent contractor cannot be held liable for his *own* negligence outside of the 'peculiar risk' arena." *Marcano*, 237 F. Supp. 2d at 599.

■ HOVIC relies on *Monk* in support of its contention that in the Virgin Islands employers cannot be held liable to employees of their independent contractors for injuries caused to others by the acts or omissions of the contractor under any provision of Chapter 15 of the Restatement (Second of Torts). However, as discussed above, the Appellate Division of the District Court and the Third Circuit explicitly rejected this interpretation and hold that an injured employee of an independent contractor *does* have a cause of action against the employer of the contractor, for the employer's direct negligence. *See Figueroa*, 198 F. Supp. 2d at 637; *Gass v. Vitelco*, 311 F.3d at 247. Thus, contrary to HOVIC's assertions, the law here is clear — an employer can be held liable for injuries to an independent contractor's employees under RESTATEMENT (SECOND) OF TORTS §§ 409, 414. That being the case, the Court now turns to the issue of HOVIC's control under § 414.

## C. HOVIC Did Not Retain Control Over Joseph's Day-to-Day Work.

HOVIC contends that there is no evidence that it retained control "over method or operative detail of the task assigned by UDCI to Plaintiff and his crew." Def's Memo. Mot. Summ. J., 13. Essentially, HOVIC argues it only retained a general contractual right over UDCI and that general right is not sufficient control to create liability under Restatement § 414. *Id.* On the contrary, Joseph contends that HOVIC "retained control over virtually

13

every aspect of the UDCI employees' work, including Plaintiff's work." Pl.'s Opp. Def.'s Memo. Mot. Summ. J., 24.

■■■ "[Restatement § 414] provides that one who retains control of any part of the work, is subject to liability for harm that is caused by his failure to exercise his control with reasonable care." *Figueroa*, 198 F. Supp. 2d at 644 (citing § 414). "Control is not predicated upon the day-to-day activities of a general overseer. It involves a more intricate involvement in the work to be done and may be established by showing that the employer retained a degree of control over the manner in which the work is to be done." *Id.* (citing § 414, cmt. c). Generally, "[t]he issue of the degree of retained control is one of fact. Many factors may be relevant, and therefore the issue is best left to a jury. Where [the plaintiff] provided enough evidence to support the genuine issue of control over [the independent contractor] by [the employer], judgment as a matter of law is improper." *Id.* at 645. *See also Hood v. Hess Oil Virgin Islands Corp.*, 22 V.I. 456, 650 F. Supp. 678, 680 (D.V.I. 1986). "[T]he proof must be comprised of affidavits, depositions, answers to interrogatories, or admissions on file." *Hood*, 650 F. Supp. at 680. Thus, "[t]o determine whether there was sufficient control to subject HOVIC to liability, both the contract and any affirmative exercise of control are relevant." *Figueroa*, 198 F. Supp. 2d at 644.

Joseph cites several examples, which he theorizes gave HOVIC the requisite control over UDCI employees and in turn Joseph himself as UDCI's employee. First, Joseph contends that newly hired employees were required to attend HOVIC's Right to Know Safety course. Pl.'s Opp. Def's Memo. Mot. Summ. J., 21. Second, he contends that UDCI was required to comply with HOVIC's personnel regulations and HOVIC's operating and training manuals. *Id.* at 22. Third, Joseph asserts that HOVIC safety personnel monitored the area where Joseph worked to determine whether employees were using tools provided by HOVIC. *Id.* Fourth, Joseph contends that HOVIC employees had the authority to direct and/or supervise the manner in which UDCI employees performed their work. *Id.* Finally, Joseph points to the Parties' Agreement to indicate HOVIC's control over UDCI's work stating that UDCI and its employees were required to follow HOVIC's personnel and safety regulations, were required to comply with OSHA standards, and that HOVIC retained the right to advise UDCI if it disagreed with UDCI's method of execution of the work. *Id.* at 23 (citing the Parties' Agreement ¶¶ 3.2, 3.8, 5.1.15).

14

In reference to Joseph's evidence regarding HOVIC's Hands On Program, Joseph asserts that "HOVIC safety personnel walked around surveying every area of the refinery, including the Cat Cracker area and the area where Plaintiff was working digging the hole or bending steel, to determine whether the workers were actually using the tools provided by Hess." Pl.'s Opp. Def.'s Memo. Mot. Summ. J., 22 (citing Colabella, Jr. Dep. at 15). Joseph's assertion here is misleading. The testimony of Rocco Colabella, Jr.,[8] whom Joseph cited, described HOVIC's Hands on Tools Program as a survey performed to measure activity in the field of craft workers (including UDCI employees), which was used to validate construction project's progress. Colabella, Jr. Dep. at 13. Particularly, he testified that "[there] were survey techs that went out and observed crews and they marked whether there was activity working with the tool or they were not working with a tool." Colabella, Jr. Dep. at 15. When asked, "how did they know which crews to look at?", Colabella responded "It was basically random." *Id.* There was no mention of Joseph or his crew at this point of the deposition nor did Colabella indicate that Joseph or his crew was monitored at any time under this program. In reference to UDCI, Colabella testified that the Hands on Tools' Reports were shared and discussed with UDCI but again there was no specific testimony as to Joseph. *See* Colabella, Jr. Dep. at 13-15.

██ Joseph's other proffered evidence — regarding new employees being required to attend HOVIC's Right-To-Know Safety course, employees being required to comply with HOVIC's personnel regulations, and UDCI being required to comply with HOVIC's operating and training manuals and OSHA standards pursuant the Parties' Agreement — all relate to HOVIC's general right to oversee the work of its contractors and their employees. These examples are insufficient to establish a genuine issue of fact as to whether HOVIC directed or controlled the day-to-day work of UDCI employees (including the work of Joseph) or the manner or method in which that work was done. *See Hood*, 650 F. Supp. at 681 ("a general right of inspection and supervision to insure the contractor's compliance with project specifications is generally insufficient to impose § 414 liability. . . . Nor is a right to

---

[8] Rocco Colabella, Jr. testified that he was the Director of Administrative Services for HOVENSA, Colabella, Jr. Dep. at 5.

conduct safety inspections or prescribe safety requirements enough." (internal citations omitted)).

Moreover, Joseph testified in his deposition that the general foreman (who worked for UDCI but Joseph could not recall his name) gave him and his co-worker[9] the assignment the day he got injured, which was to continue digging the holes that they had been digging on previous workdays. *See* Joseph Dep. at 66-68; 61-64. He further testified that only the UDCI general foreman came to "check if we do it the right way" but no other bosses or supervisors from "the refinery" or "Hess" checked on their work. *Id.* at 69. As the record indicates, Joseph's injury occurred under the supervision of UDCI's general foreman and Joseph's supervisor, Willis.[10] There is no evidence that a HOVIC supervisor or employee was present during Joseph's work.

The final issue Joseph presents is in regards to control over the equipment used the day of his injury. Joseph argues that he requested a forklift, which should have been provided by HOVIC but HOVIC "negligently failed to make available to Plaintiff a forklift with which to dig the hole." Pl.'s Opp. Def.'s Memo. Mot. Summ. J., 2. Joseph points the testimony of Ben Mitchell to support his contention that HOVIC owned and controlled the use of the equipment used for the UDCI job. Pl.'s Opp. Def.'s Memo. Mot. Summ. J., 7. While Joseph asserts that Mr. Mitchell testified that HOVIC owned the equipment, tools, or supplies used by UDCI, Joseph himself also testified specifically to the use of the shovel rather than the use of a forklift in his deposition, which in pertinent part states:

\*\*\*

Q. So you had to use the handheld shovels?

A. Yes.

Q. Because it was a fairly small hole, correct?

A. Yes.

Q. **Who decided which shovel or what type of shovel to use?**

A. When you ask them.

---

[9] Joseph identified John Liburd as the co-worker who was working with him on the day of his injury. Joseph Dep. at 60.

[10] Joseph identified his supervisor as "Willis." Joseph Dep. at 59, 61.

Q. No, who. Did you?

A. **Me and Liburd decide that**.
*** 

Joseph Dep. at 64-65 (emphasis added). Joseph goes on to explain.
***

Q. How deep were these holes that you were digging?

A. Three to four feet down.

Q. Okay. Now, when you would dig these holes, how long would it take you to dig one?

A. Sometime take a hour, sometime if you get some part good, might take about thirty minutes, forty minutes, according because if you get a lot — **if you get concrete, because they have ground wire, that's the reason they don't send the machine to do it. Tell the men have to do it by hand. If the machine do it, it could cause the factory to blow up**.

Q. Cause the factory to blow up?

A. Yes.

Q. **That's why you couldn't use the machine**

A. **Yeah, couldn't use the machine because you have a lot of underground wire**. They don't know which part the underground wire. They don't know which part the underground wire is. When we was digging, sometime we get on wire.

Q. Okay.

A. When you get the ground wire, we can't go too deep if we dig the hole.

Q. In other words, you had to be careful?

A. Yes.

Q. The machine couldn't feel things like you could yourself?

A. Yeah.

Q. Okay.

A. This is the reason.
***

Joseph Dep. at 71-72 (emphasis added).

█ The Court is cognizant that issues of control are factual determinations to be made by a trier of fact. Summary Judgment, however, must be granted if Joseph fails to produce sufficient evidence to

17

counter that evidence produced by HOVIC, which could permit a trier of fact a choice. There has been no evidence presented suggesting that HOVIC controlled the manner and method in which Joseph completed his work or that HOVIC controlled UDCI's daily work. By Joseph's own testimony, the use of a shovel was the decision of his co-worker and himself and was necessary to prevent damage to the refinery. Joseph further testified that he received his orders on the day of his injury from the UDCI general foreman and his supervisor. Consequently, the Court cannot find that Joseph has presented evidence warranting determination by a fact finder that HOVIC controlled the manner or method of his work nor that HOVIC assumed any affirmative exercise of control over his work when Joseph was not supervised by HOVIC's personnel, his tool of choice was not determined by HOVIC, and he has presented no other evidence of retained control by HOVIC.

## CONCLUSION

Based on a comprehensive review of the evidence on record, the Court finds that UDCI was an independent contractor of HOVIC pursuant to RESTATEMENT (SECOND) OF AGENCY § 220 and that HOVIC as an employer of UDCI could have been liable for Joseph's injuries pursuant to RESTATEMENT (SECOND) OF TORTS § 409 and § 414. Yet, HOVIC did not retain control over the method and manner of Joseph's work sufficient to make it liable under § 414. Consequently, there are no genuine issues of material fact that warrants determination by a fact finder and summary judgment in favor of HOVIC is appropriate. Accordingly, the Court having been advised of the premises herein, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**. It is further

**ORDERED** that this matter is **DISMISSED**.